[Civ. No. 1678.   Third Appellate District.—November 22, 1917.]

TOWN OF SUISUN CITY (a Municipal Corporation), Respondent, v. PACIFIC GAS AND ELECTRIC COMPANY (a Corporation), Appellant.

MUNICIPAL CORPORATIONS—FRANCHISE FOR ELECTRIC LIGHT AND POWER PURPOSES—ORDINANCE PARTLY VOID—CONSTITUTIONAL LAW.—An ordinance of a municipal corporation granting to a private individual a franchise to construct and maintain poles and wires upon its streets for the purpose of selling and disposing of electricity for both light and power purposes is void, in so far as it attempts to grant a franchise for lighting purposes, in view of section 19 of article XI of the constitution, but is valid as to the franchise for power purposes, and under the act of 1901 (Stats. 1901, p. 265) the city can only collect a percentage of the sales for power purposes.

APPEAL from a judgment of the Superior Court of Solano County.   W. T. O'Donnell, Judge.

The facts are stated in the opinion of the court.

Wm. B. Bosley, and Leo H. Susman, for Appellant.

Meredith, Landis & Chester, Theodore W. Chester, and George J. Raymond, for Respondent.

THE COURT.—A rehearing was granted in this case for the purpose of considering the case of *City of Hanford* v. *Hanford Gas etc. Co.*, 169 Cal. 749, [L. R. A. 1915E, 165, 147 Pac. 969], which was called to our attention for the first time in the petition for a rehearing. We find nothing in said case which, in our judgment, militates against the views expressed and the conclusion reached in our former opinion. The question as to the right of a municipality to exact from lighting and other like public service corporations the payment of certain sums for a franchise to operate its business in municipalities was not raised, considered, or discussed in the Hanford case, and it is, therefore, no authority for the position that municipalities may impose upon such corporations a charge upon gross receipts arising from the use of gas or electricity for lighting purposes. The cases cited in the original opinion filed herein seem clearly enough to hold that no charge for the use of gas or electricity for lighting purposes may, under the terms of section 19 of article XI of the constitution, as that section read when the franchise here involved was granted, be exacted from corporations furnishing the same in municipalities. Indeed, since the constitution itself directly grants to public service corporations engaged in the generation and manufacture and sale of electricity and gas the right to enter the streets and other thoroughfares of a city and use the same for the laying down of their pipes, etc., for the purpose of supplying gas and electricity to the inhabitants of such city for lighting or illuminating purposes, we cannot see how it may or could consistently be held that the right so granted may in any way be hampered or impaired or qualified by any act of such city; and certainly such might well be held would be the effect of a ruling that the city may exact a charge from such corporations for supplying gas or electricity, or both, to the inhabitants of such city for use for illuminating purposes.

After a full consideration of the whole case, as it is submitted here, however, the justices of this court are of the opinion that the conclusion heretofore arrived at by this court, as expressed in the former opinion filed herein, is correct, and we, therefore, approve and adopt the opinion prepared by Justice Burnett, and which was handed down and filed herein. Said opinion is as follows:

"This appeal is from a judgment for $927.84 and interest upon an agreed statement of facts submitted to the superior

court of Solano County pursuant to section 1138 of the Code of Civil Procedure. Since 1884 the town of Suisun .City has been a municipal corporation of the sixth class, and has never owned nor controlled any public works for supplying artificial light. From September, 1900, until June 1, 1910, one Leonard Prior owned and operated an electric distributing system embracing poles and wires suspended therefrom, constructed on the streets and highways of said town, and used for supplying the town and its inhabitants with electric light and power. On January 3, 1905, the board of trustees adopted an ordinance purporting to grant to Prior and his assigns the franchise to construct and maintain poles and wires upon said streets for the purpose of transmitting electric energy, and to sell and dispose of electricity for light and power. Section 12 of the ordinance provides that the successful bidder and his assigns must, during the life of the franchise, pay to said town two per cent of the gross annual receipts arising from the use, operation, and possession of said electric system. On June 1, 1910, Prior sold to defendant said electric plant and business connected therewith and all the rights granted to him by section 19 of article XI of the constitution of this state, and whatever franchise he received by virtue of said ordinance of January 3, 1905. Ever since said June 1, 1910, the defendant has owned and operated all of said property for the purpose of supplying said town and its inhabitants with electric light and power, no poles or wires being used exclusively for light or power purposes, the electricity for power and for light being delivered, measured, and charged for separately and the receipts therefor being kept in separate accounts.

"The contention of defendant, as set forth in said agreed statement of facts, is that said ordinance could and did legally grant only a franchise for the purpose of transmitting electric power, and obligated the holder thereof to pay to said town two per cent only of the gross annual receipts from the sale of said power, and could not and did not legally obligate the holder thereof to pay any percentage for the sale of electricity for lighting purposes, as the franchise and privilege of using said streets and highways for the purpose of furnishing illuminating light were granted by section 19 of article XI of the state constitution. On the other hand, plaintiff contends that said ordinance could and did legally

grant the franchise to construct, erect, and maintain said poles and wires for both of said purposes and obligated the holder thereof to pay said percentage of the sales for power and light to said town and its inhabitants.

"Another position taken by respondent is 'that even if the lighting privilege is covered by the constitution, the Gas Company admittedly received a franchise it was not entitled to under the constitution, to wit, the power privilege, and this is ample consideration for the obligation to pay two per cent of the total receipts, as provided in the franchise, which is a contract between the parties. Furthermore, the Gas Company is now estopped from attacking the validity of this provision.' As indicating the scope and purpose of said provision, reference is made by respondent to the debate in the constitutional convention wherein there was no allusion to electricity, but the subject was treated as though the privilege of furnishing gas and water were the only consideration in the minds of the members of the convention. It is claimed, furthermore, that in consonance with a familiar rule of construction, the particular provision in the constitution—'and of laying down pipes and conduits therein and connections therewith'—is a specific limitation upon the general words, 'have the privilege of using the streets,' and that 'laying down pipes and conduits therein' cannot reasonably be construed as authorizing the construction and maintenance of poles and wires, and to so hold is to read into the constitution something that its language does not import. In this connection, it is further asserted that 'the provisions of the constitution are mandatory and the mode prescribed is the measure of power,' and in further support of its contention, this general principle of construction is invoked, 'that grants of franchises and special privileges by the state to private persons or corporations are to be construed most strongly in favor of the public and that where the privilege claimed is doubtful, nothing is to be taken by mere implication as against public rights.'

"(1) The position of respondent is clearly stated, strongly argued, and imposingly supported by respectable authority, and there is much reason for the view that it constitutes a correct exposition of said constitutional provision, but the question has been decided otherwise by the supreme court, and we are bound by that decision.

"In *Pereria* v. *Wallace*, 129 Cal. 397, [62 Pac. 61], the supreme court held that said constitutional section included electric lights; it declared unconstitutional the sale of franchise act of 1897, in so far as it attempted to make the right or franchise to erect poles or wires for lighting purposes the subject of competitive bidding; and it affirmed the judgment of the lower court ordering a writ of mandate to issue requiring the defendants to grant to plaintiff the privilege of erecting and maintaining poles and wires along the streets of said town for the purpose of conveying electricity for power and lighting purposes to be furnished to the inhabitants thereof.

"It is claimed by respondent that the question before us was not raised or discussed in that case, and, therefore, the decision should not be considered as controlling. It is true that appellants claimed a reversal on other grounds, and to them the opinion was specifically addressed, but whether the constitutional provision was broad enough to include the franchise in question was so fundamental and obtrusive as necessarily to challenge the attention of the court. It could hardly be overlooked, and it is altogether probable that of its own accord, and for that reason, the court could and would have reversed the cause if it had deemed the franchise not embraced within said provision of the constitution.

"In the course of said opinion it is declared: 'The legislature, therefore, cannot modify or change the provisions of said section 19, article XI, above quoted, as to the privilege or franchise of supplying the town of Etna with artificial light. The constitution intended that there should be no such restriction upon competition in supplying these prime necessities as would necessarily result if the privilege could only be granted to the highest bidder, for such bidder would necessarily secure an exclusive right to the exercise of the franchise, the only condition imposed by the constitution being the right of the municipality "to regulate the charges thereof." '

"If the franchise to erect and maintain poles and wires for the purpose of furnishing electricity for lighting purposes was conferred by said provision of the constitution, the attempted grant of said privilege by said ordinance of respondent was necessarily ineffective and void, and the only franchise thereby conveyed was for the construction and maintenance of pole and wire lines for transmitting electric

power, and it would follow, of course, that a charge could be made by the city only for the latter franchise and that no burden or obligation could be legally imposed upon appellant for the lighting franchise other than what is permitted by said section of the constitution, which does not include the payment of any percentage or other sum, but is limited to enacting measures relating to damages to the streets and indemnity therefor.

"In *In re Johnston,* 137 Cal. 115, [69 Pac. 973], it is said: 'The designation of "damages and indemnity for damages" as the subject upon which the municipality may prescribe regulations in regard to laying the pipes is a limitation upon its authority over the matter, and a prohibition from prescribing regulations upon any other subject connected with the exercise of the privilege. When the sovereign authority of the state, either in its constitution or through its legislature, has created a right and expressed and defined the conditions under which it may be enjoyed, it is not within the province of a municipality where such right is sought to be exercised or enjoyed to impose additional burdens or terms as a condition to its exercise.'

"And it was held by this court in *Town of St. Helena* v. *Ewer,* 26 Cal. App. 191, [146 Pac. 191], that the rule is not affected by the fact that the applicant for a franchise granted by said section of the constitution agrees to pay a certain percentage of his gross earnings arising from its use to the municipality which attempted to grant such franchise. Therein it is said: 'The contention that the claim may be enforced as the subject of private contract between Ewer and the town cannot be maintained. The facts alleged show beyond dispute that in dealing with the public, the municipality was acting in its legislative capacity and that its action is not referable, for its support, to the power of making contracts. . . . Plaintiff cannot avoid the restraining effect of the constitution by attempting to convert its legislative acts into the contracts. . . . We cannot escape the fact that the grant was made on condition that the grantee pay for the privilege granted—a condition, as we have seen, which is beyond the power of the municipality to impose.'

"But it is not disputed that by said ordinance the board of trustees granted to Prior and his assigns a franchise to erect and maintain poles and wires for the purpose of fur-

nishing electric power and that the right existed to charge for this privilege as provided by the statute in force at the time of said grant, and the inquiry then is, whether any part of the receipts from the exercise of the lighting franchise may be included in the consideration for the grant of this power privilege. The statute itself provides the terms and conditions upon which said franchises may be granted, and it will not be disputed that the municipality must be guided and controlled by the provisions found therein. The first of these acts, commonly known as the 'Sale of Franchise Act,' was passed by the legislature in 1893, [Stats. 1893, p. 288]. It is entitled: 'An act providing for the sale of railroad and other franchises in municipalities, and relative to granting of franchises,' and it provided for the public advertising of the fact that an application for a franchise had been made, and that the franchise must be awarded to the highest bidder. This was followed by the enactment of 1897, [Stats. 1897, p. 135], entitled: 'An act providing for the sale of street railroad and other franchises in municipalities, and providing conditions for the granting of such franchises by the legislative or other governing bodies, and repealing conflicting acts.' This act also provided for public advertising of the fact that an application for a franchise had been made, that no bids will be received of a single sum or amount stated, but that all bids must be for the payment of a stated per cent of the gross annual receipts of the person to whom the franchise is awarded, arising from its use, operation, or possession, but such percentage shall in no case be less than three per cent per annum of such gross receipts. The statute, in so far as it provided for offering lighting franchises for sale to the highest bidder, was declared in *Pereria* v. *Wallace, supra,* to be unconstitutional, as conflicting with said section 19, article XI, of the constitution. The next act, and the one under which the sale was made in the present instance, was passed in 1901 (Stats. 1901, p. 265), and is entitled: 'An act providing for the sale of street railroad and other franchises in municipalities, and providing conditions for the granting of such franchises by legislative or other governing bodies, and repealing conflicting acts.'

"Section 1 of said act is as follows: 'Every franchise or privilege to erect or lay telegraph or telephone wires, to construct or operate street railroads upon any public street or

highway, to lay gas-pipes for the purpose of carrying gas for heat and power, to erect poles or wires for transmitting electric heat and power along or upon any public street or highway, or to exercise any other privilege whatever hereafter proposed to be granted by boards of supervisors, boards of trustees, or common councils, or other governing or legislative bodies of any city and county, city or town within this state, except steam railroads and except telegraph or telephone lines doing an interstate business, and renewals of franchises for piers, chutes or wharves, shall be granted upon the conditions in this act provided, and not otherwise.' It is to be seen that no mention is made therein of any franchise for laying water-pipes or laying or erecting pipes or structures for furnishing light. This, no doubt, was in consequence of the decision in the Pereria case, *supra.*

"Said act provides also for public advertising of the application, and in section 3 thereof is this language: 'The publication must state the character of the franchise or privilege proposed to be granted, . . . and if it be a street railroad, the routes to be traversed; that sealed bids therefor will be received up to a certain hour and day named therein, and that the successful bidder and his assigns must, during the life of said franchise, pay to the municipality two per cent (2%) of the gross annual receipts of the person, partnership or corporation to whom the franchise is awarded, arising from its use, operation or possession. No percentage shall be paid for the first five (5) years succeeding the date of the franchise, but thereafter such percentage shall be paid annually. . . . ' Section 5 of said act provides: 'Said advertisement shall also contain a statement that the said franchise will be granted to the person, firm or corporation who shall make the highest cash bid therefor; provided only, that at the time of the opening of said bids any responsible firm or corporation present, or represented, may bid for said franchise or privilege a sum not less than ten per cent above the highest sealed bid therefor, and said bid so made, may be raised ten per cent by any other responsible bidder present, and said franchise or privilege shall finally be struck off, sold and granted by said governing body to the highest bidder therefor, in gold coin of the United States, and said successful bidder shall be required to deposit with said governing body, or such person as it may direct, the full amount of his or its said bid, within

twenty-four hours thereafter; and in case he or it shall fail so to do, then the said franchise or privilege shall be granted to the next highest bidder therefor.'

"From the foregoing, it is quite apparent that the consideration for the sale, as far as it is to be determined by the action of the governing body of the municipality, is to be for a stated amount to be paid in cash immediately. In other words, in case there be competitive bids, the municipal authorities have no discretion as to whom they shall sell the franchise, or upon what basis. They must sell—if they sell at all—for cash and to the highest bidder. (*Thompson* v. *Alameda County,* 111 Cal. 553, [44 Pac. 230].) If there be no competitive bids, however, or no cash offer, they may grant to any applicant the franchise upon such reasonable regulations as they may prescribe, and upon the condition provided by the statute that the applicant pay to the municipality a certain percentage of the gross proceeds arising from the business of operating the franchise. The municipality has no control over this percentage. It is not the subject of contract, but is fixed at two per cent by the law. It is to be taken from the gross proceeds of the use and exercise of the franchise which is granted by said municipality. This means, of course, from the proceeds of the franchise which is legally granted by the authorities. No percentage can be charged against a franchise which already belongs to the applicant.

"It is quite plain, though, that by said ordinance the city board of trustees attempted to impose this percentage charge upon the applicant for the privilege of supplying electric light as well as the electric power. But the charge for the power was in excess of the allowance provided by the law, and is, therefore, void to that extent.

"The fact is the sale of the franchise was not made for cash at all. The record does not even show that any bid was received for the same. Prior was and had been for years operating the plant, and there was probably no disposition to exact of him anything more than the percentage provided by the statute.

"To recapitulate: The board of trustees attempted to grant two franchises. One of these, however, already belonged to the grantee by virtue of the provision of the constitution, and, therefore, as to it said ordinance was inoperative. The franchise which was the subject of bargaining between Prior

and the municipality was not sold for cash, but was transferred in consideration of the percentage provided by law. It is unimportant that said percentage was recited in the ordinance, as this added nothing to what is fixed by the statute. The case is exactly as though two separate ordinances had been passed, in one of which a franchise was granted to furnish electric light, and in the other, to supply electric power, and in each it was provided that the grantee should pay two per cent of the gross proceeds to the city.   Under the authorities, as we have seen, the attempted charge for the first would fail and only the second could be collected.

"As we have already intimated, Prior and the trustees no doubt believed that the town had the legal right to grant or withhold the lighting franchise.   The parties, in other words, were acting under a mutual mistake as to their legal rights in the premises, and this accounts for the charge attempted to be imposed upon the exercise and operation of the electric light franchise.   The mistake, though, would not prevent appellant from taking advantage of its legal rights when they were disclosed unless the doctrine of estoppel could be successfully invoked.   But we can see no room for the application of such principle.   Respondent cites, in this connection, such cases as *Mayor etc. of Borough of Rutherford* v. *Hudson River Traction Co.,* 73 N. J. L. 227, [63 Atl. 84], wherein a street railroad franchise provided that the railroad company do certain macadamizing, and it was contended that the provision was *ultra vires* and void.  Therein it was said: 'But in our view it is not open to the traction company to raise the question that the grant of its local privileges and franchises was *ultra vires* the municipal corporation, while at the same time the company retains and enjoys these privileges and franchises.   The plea of *ultra vires* is not admitted in such circumstances except where it is practicable to restore the *status quo ante,* and we therefore think the present respondent is estopped from setting up that plea.'   But herein the only privilege secured by Prior through the action of the board of trustees was to operate the plant for the purpose of furnishing electric power, and appellant does not claim that therein was the act *ultra vires.*   If such claim were made, it is probable that it could not be maintained by virtue of the principle of estoppel. The doctrine, however, does not preclude the assertion of a right and privilege obtained from an entirely different source,

nor does it affect contracts entered into beyond the range of municipal authority. In *City of Arcata* v. *Green*, 156 Cal. 759, [106 Pac. 86], it was said: 'A party contracting with a city regarding a subject matter within the scope of the city's powers may, where he has received the benefit of the contract, be precluded from asserting that the contract was not, on the part of the city, executed in the manner required by law. The doctrine, however, cannot be made to cover contracts entirely beyond the range of the municipal authority.'. (See, also, *Foxen* v. *City of Santa Barbara*, 166 Cal. 77, [134 Pac. 1142], *Town of St. Helena* v. *Ewer, supra.*)

"We can see no merit in the last two contentions of respondent, and as to the first, the law has been construed in this state in favor of appellant's claim.

"The judgment should be reduced to $57.98, and, as thus modified, it is affirmed, appellant to recover its costs."

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 21, 1918.

Angellotti, C. J., dissented from the order denying a hearing in the supreme court.