[No. 27876. *En Banc.* April 26, 1940.]

THE WASHINGTON WATER POWER COMPANY *et al., Respondents,* v. W. PAT ROONEY *et al., Appellants.*[1]

*G. M. Ferris, B. A. Farley,* and *Paul F. Schiffner,* for appellants Rooney *et al.*

*John E. Blair, C. C. Dill,* and *E. Ben Johnson,* for appellants Bonner *et al.*

*Post, Russell, Davis & Paine, Hamblen, Gilbert & Brooke,* and *Randall & Danskin,* for respondents.

GERAGHTY, J.—This action was brought by the plaintiffs, as taxpayers, against the city of Spokane, its city commissioners, and the election board of Spokane county, to enjoin the holding of an election for submission to the voters of the city of Spokane of franchise

[1]Reported in 101 P. (2d) 580.

ordinance No. C6625, on the ground that the ordinance was not subject to referendum. The members of the county election board were subsequently dismissed from the action, because the date fixed by the city council for holding the election had passed while the cause was pending below.

By leave of court, certain taxpayers intervened in the cause and filed a complaint in intervention, seeking relief against the parties plaintiff and defendant, and praying for judgment that ordinance No. C6625 be declared null and void; that the Washington Water Power Company, one of the plaintiffs, as well as the defendant city and its officials, be enjoined from taking any further proceedings under the ordinance, including its submission to a vote of the electors of the city, and from asserting any claim of right under it; and that the plaintiffs' action be dismissed.

A judgment dismissing the interveners' complaint was entered after a demurrer to it, interposed by the plaintiffs, had been sustained and the interveners had declined to plead further.

A demurrer interposed by the defendants to the plaintiffs' complaint was overruled, and, as the defendants declined to plead further, judgment was entered enjoining them from expending any money to hold an election for the purpose of submitting ordinance C6625 to the voters for their approval or rejection.

The defendants and interveners gave separate notices of appeal and filed separate bonds for costs. For convenience, the Washington Water Power Company will hereafter be referred to by that name, or as the "power company," as if sole respondent; the defendant city and its officials will be referred to as "the city," and the appellant interveners as "interveners" simply.

The facts, as they are alleged in the pleadings and

exhibits, necessary to a determination of the issues, may be summarized as follows:

The Washington Water Power Company is engaged in the generation and distribution of electricity and has, for many years, been supplying electricity for light and power in the city of Spokane under a franchise granted by ordinance No. A482 to its predecessor in interest, the Edison Electric Illuminating Company, July 31, 1894, and expiring July 31, 1944.

The power company owned all of the stock in a subsidiary, Spokane Central Heating Company, and both companies had the same officers. The heating company operated a steam-heating plant and distributed steam and hot water to parts of the business section of the city. It held a franchise which authorized it to maintain distribution lines and conduits in the streets of the city for distributing steam and hot water. The franchise also authorized the grantee to engage in the sale and distribution of electricity and, to that end, to erect wires, underground conduits, and other appliances in the city's streets. This franchise was granted to the heating company's predecessor in interest, The Trustee Company, April 6, 1914, for the period of twenty-five years, expiring April 6, 1939.

While its franchise authorized it to do so, the heating company did not engage in the distribution and sale of electricity, but confined its business to the distribution of steam and hot water. Each of the companies paid an annual fee of twenty-five hundred dollars to the city for the privileges granted under its franchise.

April 27, 1939, the Spokane city council passed ordinance C6625. The ordinance granted to the heating company, for the term of twenty-five years, the right to maintain its pipes and conduits for the conveyance of steam and hot water for sale to the inhabitants of

the city for heating and other purposes, and also the right to construct and maintain poles, wires, conduits, and other instrumentalities necessary and required for the distribution and sale of electricity.

Prior to the passage of the ordinance, negotiations were had between the city council and the officials of the power company in relation to the consideration to be paid by the grantee for the franchise, and four contracts were entered into. Three of these had reference to the rate to be charged for intersection traffic signals and lights, curb lights, and power furnished to the city's pumping plant.

Section 2 of the ordinance provided that the grantee named therein, the Central Heating Company, its successors or assigns, should pay to the city annually, as compensation, a sum equal to one per cent of the gross earnings of the grantee, its successors or assigns, for the sale of steam, hot water, and electricity used within the limits of the city. As the nominal grantee was not distributing electricity, and as its gross revenue from the sale of steam and hot water amounted to approximately two hundred thousand dollars a year, one per cent of its gross earnings would amount to less than the flat fee of twenty-five hundred dollars paid under its old franchise. Accordingly, the fourth agreement between the power company and the city recited that it was the intention of the company to consolidate the heating and power companies on or before July 1, 1939, and that the property of the heating company, on and after that date, would become the property of the power company.

It was agreed that, if such consolidation should not take place until after July 1, 1939, the payment of the one per cent tax on the gross income from the sale of electric light and power mentioned in § 2 of ordinance C6625 should not thereby be postponed, but the power

company would pay the agreed tax upon the gross annual income of its business from the sale of steam, hot water, and electric light and power after that date, regardless of whether such business should be carried on by the power company or a part of it carried on by the heating company, and regardless of whether or not the consolidation should or should not be completed. The current gross income from the power company's electric light and power business in the city was three million dollars per annum.

Ordinance C6625 provided that it should become effective thirty days after its passage. After passage, the ordinance was accepted by the heating company, and, June 5, 1939, that company transferred and assigned to the power company all its right and interest in and to the franchise; and the power company submitted to the city council, for its approval, a bond required of it as assignee. The bond was not approved by the council for the stated reason that the ordinance had been suspended by the filing of a petition for referendum.

Section 101 of the charter of the city provides: "All franchise ordinances, except as otherwise provided by state law, shall be subject to referendum under the general provisions of this charter." Section 81 provides: "The people of Spokane, in addition to the method of legislation hereinbefore provided, shall have power of direct legislation by the Initiative and the Referendum." With respect to referendum, § 83 of the charter provides:

"If prior to the date when any ordinance shall take effect, a petition signed by qualified electors equal in number to 10 per centum of the entire vote cast at the last preceding general municipal election, shall be filed with the clerk, protesting against the enactment of such ordinance, it shall be suspended from taking effect. Immediately upon the filing of the petition the

clerk shall do all things required by section eighty-two (82) (b) of this article. Thereupon the council shall immediately reconsider such ordinance, and, if it do not entirely repeal the same, shall submit it to popular vote at the next municipal election; or, the council, in its discretion, may call a special election for that purpose; and such ordinance shall not take effect, unless a majority of the qualified electors voting thereon at such election shall vote in favor thereof."

May 27, 1939, a petition for referendum of ordinance C6625 was filed with the city clerk, and was thereafter certified by him to contain the number of signatures required to refer an ordinance to the people under § 83 of the charter. On receiving the clerk's certificate, the city council passed an ordinance calling a special election for submission of C6625 to the voters of the city for adoption or rejection. To restrain the holding of this election, the present action was instituted.

The respondents' contention, followed by the trial court, is that ordinance C6625 is one granting a franchise for the distribution and sale of electricity, the right to distribute and sell steam and hot water being subordinate and incidental; and that, under the terms of chapter 173, Laws of 1903, p. 360, § 1 (Rem. Rev. Stat., § 5430 [P. C. § 4635]), the exclusive power to grant a franchise for the distribution and sale of electricity is vested exclusively in the legislative authority of the city, and that such authority is the mayor and the city council.

The city contends, first, that the ordinance is subject to referendum, because the franchise granted by it is not one solely for the distribution and sale of electric energy; secondly, that, if chapter 173, Laws of 1903, is controlling, the legislative authority of the city being vested in the commissioners and the people by the city charter, the ordinance is subject to referendum; thirdly,

that the ordinance is void because it contains two subjects.

The interveners' contention is that the ordinance is void, first, because it contains two subjects, contrary to § 13 of the city charter; and secondly, because it is in contravention of § 98 of the charter, which provides that "No franchise, other than street railway franchises, shall be renewed earlier than three years prior to its expiration."

In our discussion of these contentions, we will assume that the power to grant an electric franchise is, by chapter 173, Laws of 1903, p. 360, § 1 (Rem. Rev. Stat., § 5430), vested exclusively in the mayor and the city council, as constituting the legislative authority of the city; in other words, that the question is controlled by the cases of *Benton v. Seattle Electric Co.*, 50 Wash. 156, 96 Pac. 1033; *Ewing v. Seattle*, 55 Wash. 229, 104 Pac. 259; *Dolan v. Puget Sound Traction, L. & P. Co.*, 72 Wash. 343, 130 Pac. 353; and *Neils v. Seattle*, 185 Wash. 269, 53 P. (2d) 848. These cases construed chapter 175, Laws of 1903, p. 364, § 1, as amended by chapter 99, Laws of 1907, p. 192 (Rem. Rev. Stat., § 11082 [P. C. § 4635]), relating to electric railway franchises, and employing language identical with that used in chapter 173 of the same session, as vesting in the mayor and the city council the exclusive authority to grant franchises for the operation of such railways.

It must be conceded, we think, that the authority of these cases is limited to electric and electric railway franchises, and that all other franchises for the conduct of business in the city's streets are subject to referendum. *State ex rel. Walker v. Superior Court*, 87 Wash. 582, 152 Pac. 11. The question, therefore, is: Can the right of the voters to demand a referendum, in respect to a franchise referable under the charter,

be defeated by the inclusion of that franchise in an ordinance embodying also the grant of a franchise not subject to referendum?

If it were held that the right of referendum on a steam and hot-water franchise could be defeated by coupling it in the same ordinance with an electric franchise, then it would follow that the right of referendum on, say, a telephone franchise could be defeated by embodying in the ordinance granting it a right also to distribute and sell electricity, whether it was or was not the present intention of the grantee to engage in the latter business. To illustrate, the ordinance granting to the Central Heating Company the right to distribute steam and hot water also granted the right to engage in the distribution of electricity, a right the heating company did not exercise. Yet, if the contention of the power company is correct, the inclusion in the franchise of authority to engage in the electric business would have defeated the right of referendum on the ordinance, if a referendum had been sought by the voters after its passage in 1914.

The power company emphasizes the relative importance of its electric business as compared with the steam and hot-water business, and argues that the latter business is so small as to be merely incidental to its larger electric operations. But the referability of a franchise is not dependent on the size of the business.

McQuillin, in his work on municipal corporations (2d ed.), § 1740, defines a franchise as follows:

"The term as it is ordinarily used in the decisions and by text writers . . . means the right granted by the state or a municipality to an existing corporation or to an individual to do certain things which a corporation or individual otherwise cannot do such as the right to use a street or alley for a commercial or street railroad track, or to erect thereon poles and string wires for telegraph, telephone, or electric light

purposes, or to use the street or alley underneath the surface for water pipes, gas pipes, or other conduits."

In the sense that a franchise is the grant of a right to conduct a specific business in the streets, it may be said that, in effect, ordinance C6625 grants two franchises or rights,—one for the distribution and sale of steam and hot water, the other for the distribution and sale of electricity.

Having, then, before us an ordinance granting two franchise rights, one referable and against which a valid referendum petition has been filed, the other not referable, the question is posed: What is the legal status of the ordinance? If the right of referendum on a referable subject cannot be defeated by coupling it in the same ordinance with a subject not referable, is the non-referable subject made referable by its inclusion with one referable?

The power company, while contending that the steam, hot-water, and electric provisions of the ordinance are so intermingled and common in purpose as that they may be properly combined in one franchise, concedes that, if they are to be regarded as distinct franchise rights, then the ordinance is void as containing two incongruous subjects.

Whether or not the two grants contained in the ordinance are incongruous in the abstract, they are, unquestionably, made so here by reason of the fact that one grant is within the exclusive power of the mayor and the city council while the other grant is subject to referendum. We are therefore constrained to hold the ordinance void.

Our conclusion on this head makes it unnecessary for us to discuss the second contention of the interveners, —that the ordinance is void, as being a renewal of an electric franchise earlier than three years prior to its expiration.

The judgments are reversed, and the cause remanded, to the superior court for further proceedings in conformity with the views expressed in this opinion.

ALL CONCUR.