[Civ. No. 11297.  First Appellate District, Division One.—July 11, 1940.]

OCEAN PARK PIER AMUSEMENT CORPORATION (a Corporation), Appellant, v. CITY OF SANTA MONICA (a Municipal Corporation), Respondent.

Andrew J. Copp, Jr., for Appellant.

Robert N. Baker for Respondent.

WARD, J.—An appeal by plaintiff and cross-defendant from certain portions of a judgment decreeing defendant and cross-complainant to be entitled to 2 per cent of the gross annual receipts derived from plaintiff's use, operation and possession of a franchise, and the rights and privileges thereof, as described in an ordinance of the City of Santa Monica.

It appears that the ordinance granting plaintiff's predecessor Venice Investment Company, a corporation, a franchise for the maintenance and operation of a wharf or pier, included therein a description of tide lands owned by the City of Santa Monica as well as privately owned lands of such predecessor, and that payment for such franchise was fixed at 2 per cent of the gross annual receipts of the business conducted. Subsequently, the Venice Investment Company sold, assigned and transferred its right, title and interest under the franchise to Ocean Park Realty Corporation, and later such interest was assigned by a referee in bankruptcy to the Ocean Park Pier Amusement Corporation, plaintiff herein, which company still exercises rights, interests and prvileges under such franchise.

In July, 1917, the State of California, upon certain trusts and conditions, granted to the City of Santa Monica certain tide lands and submerged lands bordering on the Pacific Ocean and contiguous to said city. Thereafter, in July, 1921, the city by ordinance fixed and determined the line of mean high tide of the ocean within the municipality and defined the boundary lines between the tide lands and submerged lands

granted the city by the state, and the privately owned uplands.

The complaint in this case alleged a mutual mistake between respondent and plaintiff's predecessor in the description of the lands. The point was not made at the trial, however, and is not urged upon appeal. A cross-complaint to quiet title raised issues relative to ownership of certain portions of the land.

The complaint also alleges that the city was "without right or authority" to include in the franchise the land held in private ownership. Taken as a whole, the complaint is sufficient to raise a question of the proper interpretation of the ordinance granting the franchise. From the record on appeal, and the arguments submitted by both sides, there appears to be no effort, either by appellant or respondent, to have the whole franchise or contract declared *ultra vires* and unenforceable; rather the purpose of appellant is to have a provision therein relative to the income from the uplands, privately owned, declared invalid.

The court found that on February 6, 1924, one L. W. Seymour presented a written application to the City of Santa Monica for a franchise to construct, operate and maintain a wharf and pier over certain lands; that after due proceedings, the franchise was sold to the Venice Investment Company, and, on March 26, 1924, ordinance No. 270 (commissioners' series) was passed granting to the purchaser a franchise covering the subject-matter set forth in the application. In particular, appellant's predecessor was granted the right to maintain and operate on the lands described, a wharf or pier, for the purposes of commerce and navigation as far as might be necessary, the portions thereof not so used to be employed for amusement and recreation purposes. The court further found that the franchise was granted in conformity with and in pursuance of the provisions of the Broughton Act (Stats. 1905, pp. 777–780, as amended by Stats. 1909, p. 125; Stats. 1915, p. 1300), and subject to the limitations of Statutes of 1917, pages 90, 91, "An act granting certain tide lands and submerged lands of the State of California to the City of Santa Monica upon certain trusts and conditions."

The court found also that the City of Santa Monica intended to include in ordinance 270 the lands therein described; that the predecessor of appellant knew at the time of

the erection of the improvements upon the land, as did also appellant at the time of the acceptance of the assignment, what lands were described in the franchise. The court further found that it was not true that there had been a mutual mistake among the various parties interested as to the lands so included in the franchise; that appellant's predecessor intended to acquire by such franchise the exact lands described in ordinance 270, including the publicly and privately owned lands, and to pay therefor 2 per cent of its annual gross income from the use, operation and possession of the franchise; and that the Ocean Park Pier Amusement Corporation, when it accepted the assignment, so understood. The court also found that the income derived from the land lying upward from the mean high tide line was not easily calculable, ascertainable, distinguishable and severable from that derived from the properties lying oceanward; that, notwithstanding the City of Santa Monica has never owned and does not now own the real property described in the ordinance which is landward of the line of mean high tide, nevertheless the franchise should be interpreted to include all property described in ordinance 270.

Separate findings were made on the cross-complaint of the City of Santa Monica, wherein the court found that the line of mean high tide was designated on a map introduced in evidence by a wavery line a distance of fifty-five feet, plus or minus, from the ocean front promenade; that such line, by gradual and imperceptible degrees and by natural means of avulsion and sudden and perceptible accretion, has been moving seaward; that the City of Santa Monica is the owner in fee as trustee for the State of California of the lands lying seaward of the high tide line established by ordinance; that appellant by mesne conveyance is the owner of the leasehold interest in various parcels of property above the tide line set forth by reference, but that such interest is subject to the rights of the City of Santa Monica under the franchise.

Judgment followed the findings and decreed that the City of Santa Monica is entitled to all sums heretofore, now, or hereafter due and payable as in the franchise provided. The notice of appeal does not indicate any objection to the findings or judgment in so far as the cross-complaint is concerned.

Respondent contends that plaintiff, having prayed for declaratory relief, based upon the theory of mutual mistake in

the description of the lands set forth by metes and bounds in the franchise, in view of its later concession that there was no such misunderstanding, may not now present a different theory, namely, interpretation of the franchise grant and want of authority.

Respondent concedes that as a basic principle the City of Santa Monica did not have authority to grant a franchise over privately-owned lands. It contends, however, that the present franchise is in fact a lease of tide and submerged lands, and seeks to have the ordinance and the acceptance of the franchise construed as such, and upon that theory argues that the city was empowered to fix any price the grantee (lessee) agreed to pay. A number of cases are cited, an examination of which, however, indicates merely that a municipality, in granting the right to erect a private wharf, has the authority to enter into a lease.

An examination of statutes and cases cited by appellant indicates that it deems this franchise to be one given to a public service utility, such as a street railway, or a gas or water utility, wherein a duty is imposed, under certain restrictions, to serve the public upon demand. Appellant corporation hardly comes within the purview of a public service utility. Certain essential characteristics are lacking; appellant and his predecessors did not agree to submit to any governmental body the right to fix prices; there was no agreement that all members of the public should be served. There is a price-fixing provision in the ordinance relative to the parking of automobiles, by which the city council reserved the right to determine whether there should be free parking or such fee as the city council should from time to time prescribe, but this was merely incidental to the whole venture.

In *Richardson* v. *Railroad Com.*, 191 Cal. 716, 720, 721 [218 Pac. 418], the court said: "In applying this principle to the proceeding before us it is well to have in mind the definition of what constitutes a public utility, as adopted and clearly set forth by this court in the case of *Allen* v. *Railroad Com.*, 179 Cal. 68, 88 [3 A. L. R. 249, 175 Pac. 466], wherein this court says:

" ' "What is a public utility, over which the state may exercise its regulatory control without regard to the private interests which may be affected thereby? In its broadest sense everything upon which man bestows labor for purposes other

than those for the benefit of his immediate family, is impressed with a public use. No occupation escapes it, no merchant can avoid it, no professional man can deny it. As an illustrative type one may instance the butcher. He deals with the public, he invites and is urgent that the public should deal with him. The character of his business is such that under the police power of the state it may well be subject to regulation, and in many places and instances is so regulated. The preservation of cleanliness, the inspection of meats to see that they are wholesome, all such matters are within the due and reasonable regulatory powers of the state or nation. But these regulatory powers are not called into exercise because the butcher has devoted his property to public service so as to make it a public utility. He still has the unquestioned right to fix his prices; he still has the unquestioned right to say that he will or will not contract with any member of the public. What differentiates all such activities from a true public utility is this, and this only: That the devotion to public use must be of such character that the public generally, or that part of it which has been served and which has accepted the service, has the right to demand that that service shall be conducted, so long as it is continued, with reasonable efficiency under reasonable charges. Public use, then, means the use by the public and by every individual member of it, *as a legal right*. Such is not only the accepted significance of the phrase by the great weight of authority as expounded by Mr. Lewis (Eminent Domain, sec. 164 et seq.), but is the definition repeatedly announced by this court.'' '

''The court also and in the quite recent case of *Van Hoosear* v. *Railroad Com., supra* (184 Cal. 553 [194 Pac. 1003]), quoted with approval the further statement in the Allen case that ' ''To hold that property has been dedicated to a public use is 'not a trivial thing' . . . , and such dedication is never presumed 'without evidence of unequivocal intention'.'' ' ''

The purpose of the passage of the ordinance was to dedicate the wharf or pier to public interest. Its operation was of public consequence, concern and use. It granted a public franchise. Though the city, in its private or proprietary capacity, may have had the right and power to lease the land under the provisions of the Statutes of 1917, page 91 ''that said city, or its successors, may grant franchises thereon, for a period not exceeding twenty-five years, for wharves and

other public uses and purposes, and may lease said lands, or any part thereof for a period not exceeding twenty-five years, for purposes consistent with the trusts upon which said lands are held by the State of California and with the requirements of commerce or navigation at said harbor", it did not elect to do so. On the contrary, the ordinance refers to the grant as a franchise. It was intended by the parties thereto to be a franchise under the Broughton Act, the provisions of which were complied with in the steps taken for the passage of the ordinance. The franchise was primarily for the purpose of commerce and navigation; the amusement feature was incidental thereto. The work of erection was to be prosecuted diligently to meet the reasonable needs of the inhabitants of the territory for the service for which the franchise was granted; the wharf was to be kept open to the public for commerce and navigation; the public was to be given an area for free parking of automobiles.

The franchise herein clearly shows that the municipality was performing a "governmental function"; that it was granted in furtherance of a use and that the municipality did not assume to grant a lease or private franchise as in *People* v. *Monstad,* 209 Cal. 658 [289 Pac. 847], wherein a "lease and agreement" was entered into between defendant therein and the city of Redondo Beach, and the provisions of the Broughton Act were not followed. In the present case the contrary appears. At a meeting of the city council the only sealed bid submitted "to conform to your notice for the sale of a franchise . . . " was for the amount of $500, which amount, upon a request by the presiding officer for further bids, was gradually raised until plaintiff's predecessor's bid of $2,000 was accepted.

A franchise may be severable to give effect to the rights of the parties under the terms thereof. (*City of Oakland* v. *Great Western Power Co.,* 186 Cal. 570 [200 Pac. 395].) In *County of Tulare* v. *City of Dinuba,* 188 Cal. 664 [206 Pac. 983], in which part of the income derived from the sale of electricity arose from its transmission over lands in other counties and over private rights of way, the court determined that the county was entitled only to income that could be traced to the use of public highways in the county. In that case the court, at page 670, said: "It is purely a matter of contract. While it is true that the payment is required by

law as a condition of the franchise grant, it is a matter of option with the applicant whether he will accept the franchise on those terms. His obligation to pay is not imposed by law but by his acceptance of the franchise.'' There is nothing in the Tulare County case to indicate that a charge could have been made in excess of the 2 per cent as provided in the act. The court merely said that the franchise could 'be accepted or rejected as the parties deemed proper.

Assuming that the Broughton Act has no application to the leasing of tide or submerged lands, and assuming, but not holding, that the contract was in fact a lease for the purpose of erecting a private wharf (*People* v. *Monstad, supra*), the agreement was made between appellant's predecessor and respondent. Whether it was a franchise or a lease is immaterial. The ordinance provided that the grantee pay the amount set forth as rental for the area described. Plaintiff's predecessor acquiesced in the contract through occupancy of the area. The description, however, embraced plaintiff's privately-owned property. Whether we consider the document as a franchise or a lease, we are confronted with the same problem; as to whether or not a governmental agency may include in a contract privately-owned property and collect revenue therefrom. The parties to a lease might have contracted to pay an amount in excess of 2 per cent, but only upon property in connection with which they had the rights of lessor and lessee.

■ We repeat, the validity of the franchise contract in its entirety is not now in issue. The city not having appealed, it may not now attack the judgment upon the theory that it had no power to make the contract, or that the terms thereof were entirely beyond the scope of the city's jurisdiction. Likewise, the question of fair competitive bidding is not raised upon the present appeal. We are limited to the questions raised. The basis of this franchise is a contract, and the appeal simmers down to the construction to be placed upon the terms thereof.

■ The right of the municipality to permit, on its own property, the erection of a wharf and the construction of buildings thereon by appellant, from which an income is to be derived, was a privilege of public concern, subject to public regulation and control by the city council. It was, therefore, a franchise. That portion of the franchise contract directing

appellant to pay to the municipality 2 per cent of the income derived from appellant's privately-owned property is void. In the case of *In re Johnston,* 137 Cal. 115, 120 [69 Pac. 973], the court said: "When the sovereign authority of the state, either in its Constitution or through its legislature, has created a right and expressed and defined the conditions under which it may be enjoyed, it is not within the province of a municipality where such right is sought to be exercised or enjoyed to impose additional burdens or terms as a condition to its exercise."

It may be well to mention the reason for the inclusion in the franchise of the privately-owned lands. A dispute existed relative to the line of mean high tide, which was not finally determined by judicial decree until the judgment upon the quiet title cross-complaint in the present proceeding. There is no appeal from that part of the judgment. It has become final. A transcript of the evidence at the time the franchise was offered for sale shows that a representative of the Venice Investment Company made the following statement: "I have already stated that these people (his clients) are the owners—lessees—of the water front, of the upland upon which the territory over which this franchise is proposed to be granted abuts. There is no question that the City of Santa Monica has a right to grant franchises extending out into the bays for piers and falls for the purpose of commerce and navigation. The grant of that franchise, however, grants no rights over private property. We desire to notify the bidders here that the franchise, if granted to anyone but the owners of the upland, will give no rights over our private property, no rights of passage or—", following which a representative of the city replied: "I simply want the city not to give an estoppel of any claim they have on any part of that land. . . . I say simply this: That any acceptance of that bid will not be made on any conditions laid down by Mr. Goudge. It will be accepted on the condition that it is a franchise to build it; and it doesn't matter whose property it is over—if he builds over his own property or somebody else's." A short time before, during the same meeting, the city had made the following statements: "We will have to rest on our construction by the courts of the written instrument. . . . If you can find a joker in it you can use it against the city. That is your privilege."

Respondent having conceded that the municipality had no authority to grant a franchise over privately-owned land, and the court having determined that the ordinance is in fact a franchise and not a lease, such concession terminates this appeal.

The municipal corporation had no power, express, implied or inherent, to include in the grant, land over which it had no proprietary interest. Whatever licensing or taxing power it may have over the land or the business conducted thereon, it may not, under the guise of issuing a franchise providing for the payment of 2 per cent of the gross annual receipts arising from the use, operation or possession of the franchise, increase such percentage by including property over which it exercised no proprietary interest. (*City of Monrovia* v. *Southern Counties Gas Co.*, 111 Cal. App. 659 [296 Pac. 117]; *City of Oakland* v. *Great Western Power Co.*, *supra*; *County of Tulare* v. *City of Dinuba, supra.*) In *Suisun City* v. *Pacific Gas etc. Co.*, 35 Cal. App. 380 [170 Pac. 1078], in construing a similar provision of an act providing for the sale of street railroads and other franchises (Stats. 1901, p. 265), the court, at page 388, said: " ' . . . and upon the condition provided by the statute that the applicant pay to the municipality a certain percentage of the gross proceeds arising from the business of operating the franchise. The municipality has no control over this percentage. It is not the subject of contract, but is fixed at 2 per cent by the law. It is to be taken from the gross proceeds of the use and exercise of the franchise which is granted by said municipality. This means, of course, from the proceeds of the franchise which is legally granted by the authorities. No percentage can be charged against a franchise which already belongs to the applicant.' " In the Suisun City case, the court was dealing with the problem of an attempt to charge 2 per cent on two franchises, one of which had been already granted. In effect, the court said that the percentage payment could not be increased by a charge in connection with a franchise over property in which the defendant held a proprietary interest.

From what has been said, it is clear that the acceptance of the franchise by grantee cannot estop appellant from showing that the city had no authority to grant the same in so far as it included appellants' own land. (*Suisun City* v. *Pacific Gas etc. Co., supra.*) The doctrine of estoppel does

not cover the portion of a franchise contract "entirely beyond the range of the municipal authority". (*City of Arcata* v. *Green*, 156 Cal. 759 [106 Pac. 86]; *Town of St. Helena* v. *Ewer*, 26 Cal. App. 191 [146 Pac. 191].)

■ The court found: "That it is not true that the income derived from the lands embraced within said Ordinance lying upward from the mean high tide line of the Pacific Ocean is easily calculable, ascertainable, distinguishable and severable from the income derived from the properties lying oceanward of the mean high tide line of the Pacific Ocean." This finding does not seem to be sustained by the evidence. If improvements are erected entirely on city-owned property, or entirely on that privately owned, the income should be readily ascertainable. If an improvement is on both properties, the space on each can be ascertained and the income proportioned, as has been done in connection with payments made under protest to the city by the appellant herein.

It appears that there are included in the franchise both so-called "state tidelands" and privately-owned lands. No claim has been made that the franchise is void as containing two incongruous subjects (*Washington Water Power Co.* v. *Rooney*, 3 Wash. (2d) 642 [101 Pac. (2d) 580, 127 A. L. R. 1044], and we refrain from expressing an opinion in connection therewith. However, a new trial is granted which will give the parties an opportunity to apply to the superior court for permission to amend the pleadings should they deem such action advisable.

That part of the judgment appealed from is reversed.

Peters, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 10, 1940, and the following opinion then rendered thereon:

THE COURT.—■ In the petition for rehearing, it is stated at page eighteen: "It is the desire of the respondent city to have the entire franchise declared void if the court feels that it does not have authority to enter into it in its entirety." This point, according to the record, was not presented on the trial of the case, nor was it presented by way of printed briefs on appeal; it was touched upon only incidentally in the oral argument in connection with the main

issue; and it is well settled that a rehearing will not be granted for the sole purpose of considering a point presented therein for the first time. (*Pasadena Ice Co.* v. *Reeder,* 206 Cal. 697, 705 [275 Pac. 944, 276 Pac. 995]; *Conner* v. *East Bay Mun. Utility Dist.,* 8 Cal. App. (2d) 613, 619, 620 [47 Pac. (2d) 774, 48 Pac. (2d) 982].)

Furthermore, in view of the point now urged by counsel for respondent, raising the legality of the entire franchise, we deem it proper to say that subsequent to the submission of the appeal for determination the justices of this court in conference caused a letter of inquiry to be sent to counsel representing the respective parties, to ascertain their views upon the question of whether on the record before us we were called upon to consider or determine any issue as to the validity of the entire franchise in the event this court should reach the conclusion that the city had no power to collect the 2 per cent of appellant's income derived from the privately-owned lands; and in this connection it was stated that if counsel desired to brief the point and to reargue it, the submission would be set aside. In response to such inquiry counsel for appellant expressed himself unequivocally that since no issue as to the validity of the entire franchise was raised by the pleadings, nor presented to or heard or determined by the trial court, such an issue was in no way involved within the scope of the present appeal. The reply received from counsel for respondent, however, was extremely indefinite. The pertinent portions thereof read: "It was my understanding that the only matter before your court at the present time was one of interpretation of an ambiguity and not one of the validity of the contract. . . . However, if I am to understand from your letter that the Court feels that the question is raised as to the authority of the city to collect the gross per cent as is provided in the franchise, when it is shown that part of the property described is publicly-owned and part of it is privately-owned, then I believe that we are specifically confronted with the problem as to the illegality or invalidity of the franchise in its entirety. In this latter event, it is the desire of the city to raise the question of the illegality or the invalidity of the franchise and file briefs thereon. As to whether or not the city desires to raise issues which are not before the Court, I will have to await reply to this letter."

Such being the nature of the replies received from counsel, the question of the validity of the entire franchise was not passed upon, but was specifically left open to be litigated by the parties if they so desired in the proper tribunal, namely, the trial court. (Code Civ. Proc., secs. 588, 589, 591.) The court in its opinion in this regard said: "No claim has been made that the franchise is void as containing two incongruous subjects (*Washington Water Power Co.* v. *Rooney*, 3 Wash. (2d) 642 [101 Pac. (2d) 580, 127 A. L. R. 1044]), and we refrain from expressing an opinion in connection therewith. However, a new trial is granted which will give the parties an opportunity to apply to the superior court for permission to amend the pleadings should they deem such action advisable."

It is hereby ordered that the letters above referred to be filed with the clerk of this court.

The rehearing is denied.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 4, 1940.