[Civ. No. 6072. First Appellate District, Division Two.—December 22, 1927.]

COUNTY OF TULARE, Appellant, v. CITY OF DINUBA (a Municipal Corporation), Respondent.

U. S. Webb, Attorney-General, LeRoy McCormick, District Attorney, and Frank Lamberson, Deputy District Attorney, for Appellant.

J. E. Greene and W. W. Middlecoff for Respondent.

KOFORD, P. J.—This appeal is from portions of a judgment and decree given in three consolidated actions. The portion of the decree appealed from divides between the County of Tulare and the City of Dinuba in that county,

the county's total share of franchise tolls paid by San Joaquin Light & Power Corporation. The payment is required by the provisions of its franchise obtained under the Broughton Act. (Stats. 1905, p. 77, and amendments thereto.) The city was incorporated after the franchise had been granted by the county. The Tulare County franchise was granted as a whole at one time, but under the principle declared by this court in *Terminal Rys.* v. *County of Alameda,* 66 Cal. App. 77 [225 Pac. 304], the tolls are to be divided between the county and the city. The amount of the payment is annually two per cent of the gross receipts arising from the use, operation, and possession of the franchise. The statute fails to provide how to divide such payments received from a system of franchises extending through several counties and cities. One of these consolidated actions was previously tried and appealed to the supreme court, where the judgment of the trial court holding the tolls uncollectible was reversed by an opinion which set out a method of dividing such gross receipts among the several counties and municipalities served under one franchise or one system of franchises granted under the said Broughton Act. The other cases by stipulation abided that appeal and after the *remittitur* and some delay all three cases were tried as one action. The question presented upon this appeal is whether the division of such tolls made by the trial court between the County of Tulare and the City of Dinuba is according to law. (See *County of Tulare* v. *City of Dinuba,* 188 Cal. 664 [206 Pac. 983].)

The appeal is upon the judgment-roll and the method of allocation and division is contained in the findings, particularly in finding No. 13. The method is as follows: First: Arrive at the gross receipts properly attributable to the franchise privilege by (a) deducting from the total gross receipts a proportion equal to the proportion of the investment cost of intangibles to the investment cost of properties used in generation and distribution of electricity; (b) from the remainder thus obtained deduct a proportion equal to the proportion which the mileage of transmission and distribution lines on private rights of way bears to the total mileage of such line through the entire system; (c) all transmission and distribution lines existing under franchises obtained otherwise than under the Broughton Act shall be

considered as though they were on private rights of way and deducted as under subdivision *b* above. Second: Having thus obtained the amount of gross receipts attributable to the entire system of public street franchises under the Broughton Act, it is determined that two per cent of said sum shall be paid to the several counties and municipalities in the proportion that the length of such franchise lines on public highways in the said counties and said municipalities bears to the total mileage of such franchise lines on public highways in the entire territory. *Third:* It is then especially provided that in dividing the amount which thus falls to the County of Tulare as a whole between that county and the City of Dinuba it shall be considered that the receipts upon which the said City of Dinuba will be entitled to two per cent shall be deemed to be the same proportion of the gross receipts of said corporation from consumers in Dinuba which the total value of all pole lines of the company's entire system bears to the total investment of the company in its entire system. Without this special provision, which we have numbered *third*, the division between the city and the county under the other provisions of the findings, would have been made in proportion to the length of franchise lines in the city and in the county, respectively—treating the whole county as one inseparable unit of franchise. It is only this exceptional provision which is attacked by appellant herein. By this special provision for the City of Dinuba, it results (the briefs state) that of the amount of tolls to be divided between the city and the county, the city receives more than it would receive if the exception had not been made. Further findings contain two groups of facts which read as if they were inserted as justification for this exception and these facts will elucidate the meaning of the clause third above. One of these groups of facts found amounts to this: That whereas in the county at large (outside the city) the franchise lines are many and long in proportion to the receipts from consumers, in the city itself the franchise lines are few and short in proportion to the receipts from consumers, the city being less than one square mile in area. For this reason it was evidently concluded that it would be just and equitable that the city should receive a greater share of the tolls than it would receive had the tolls been divided upon the theory that they should be

divided in direct relation to the relative length of franchise lines maintained in the two political subdivisions (the city and the county) respectively. In other words, it was evidently concluded that the franchise had greater earning power per mile of franchise line in the city than in the county. In the effort to make for this reason a more just and equitable division of the tolls between the county and city a rule of proportion or division was sought and found for the purpose. This rule of proportion was taken from a comparison made between (1) the value of all pole lines of the company's entire system and (2) the total investment of the company in its entire system—the fraction being made up of the amount of clause *one* as a numerator and the amount of clause *two* as the denominator.

Without consideration of the second group of facts found, this exception in the method of allocation between the city and the county would seem to us to be contrary to the principles laid down by the supreme court in the former appeal. For, suppose fifty miles of franchise line ran through a sparsely populated county with no consumers and then served a congested city with, say, five miles of line and a great number of consumers, it should be all considered as one unit. The toll being a payment for the use of the highway and not a two per cent tax upon receipts, the political subdivision sustaining the burden of the fifty-mile franchise line should receive ten times the toll that the political subdivision should receive which sustained the burden of only five miles of franchise line upon the theory that it earned ten times as much—not because the payment is according to mileage nor burden, but because it is according to earnings arising from the use of the franchise which is in turn normally in proportion to mileage or burden. Under such conditions the franchise lines in the county are helping to earn the receipts collected from the city consumers. "The reasonable construction of the language used (in the Broughton Act) is that each county or municipality is entitled to its percentage of the gross earnings arising from the use of its highway, in the proportion that the receipts arising from the use of such highways bears to the receipts attributable to all the rights of way of · the entire system." (*County of Tulare* v. *City of Dinuba,* 188 Cal. 664, at p. 676 [206 Pac. 983, 987].)

The second group of facts found, however, is to the general effect that the system of franchise lines serving the City of Dinuba is capable of segregation and separation from the system as a whole, from which it results that the `City of Dinuba system may feasibly be considered and treated as a separate unit of the franchise rights. This finding sets out that only two trunk lines (each being less than two miles in length) serving electricity to Dinuba use Tulare County roads. They come from a substation located just across the boundary of Fresno County, less than two miles away from Dinuba. Each of these lines in addition to serving Dinuba serve consumers outside of the city to the south and west and to the east and south respectively. Dinuba, as a system, enjoys only two miles of county franchise or at most the aggregate of four miles of county franchise lines, and these lines furthermore are shared with the system enjoyed by consumers outside the city and in the county district. Some of the city franchise lines are used by the company in transmitting electricity through the city to county consumers beyond. The through lines in the city serving the county may thus be an offset for the short county lines serving the city and this furnishes a reason for the court to leave out of the fraction the investment cost of the short county lines running to the city, if in fact that was done. These conditions give justification for treating the Dinuba part of the franchise system as a separate unit the earnings from which can be segregated— not with absolute accuracy, but reasonably and practically so.

In arriving at the "gross receipts arising from the use, operation and possession" (language of Broughton Act) of what might be called the Dinuba city unit portion of the franchise, the court by applying this special rule of proportion may not have awarded to the city as great a share as it might logically have done by pursuing this unit theory or subunit theory to its logical extremity. The investment costs of the company's property using franchises to supply the city compared with the investment cost of all the company's property used in serving the city as a unit might be a larger fraction than the one applied by the court, to wit, the proportion "which the total value of all pole lines of the company's entire system bears to the total investment

of the company in its entire system." (Language of the findings.) If so, the amount upon which two per cent was awarded to the city was less than the gross receipts arising from the use of all franchises enjoyed in serving the city.

We have said *may* and *might*. The appeal is upon the judgment-roll. The findings refer to a stipulation of the parties which we conclude from the context was a stipulation of facts. This stipulation is not in this record. Respondent states that we may assume that all lines in Dinuba are franchise lines—that none are private or of a kind for which the two per cent is not payable. The record does not show to the contrary. Consequently, so it is argued, Dinuba is entitled to all the tolls thereon unless the other franchises of the system show affirmatively some equity to part of them. This argument has merit because of the fact that the record here omits that important stipulation of counsel.

There is no dispute and no appeal concerning the amount due from the company to the county as a whole (including Dinuba). The company paid into court the sum of $4,546.94 for the year 1923 and $15,074.34 for the years up to and including the year 1922. The language of the court's findings used in dividing these two sums follows in part:

"20. That under and by virtue of the terms of said franchise . . . and pursuant to the stipulations of the parties hereto on file herein, there is now due and unpaid . . . for the calendar years 1923 and 1924, the total sum of $4,546.94, computed according to the rules and principles hereinbefore set forth (finding No. 13) and the court finds that in accordance with the stipulation filed herein by said plaintiff, and the defendant City of Dinuba, said sum of $4,546.94 shall be allocated as follows:

"The sum of $4,069.51 shall be paid to said Plaintiff, and the sum of $477.43 shall be paid to said Defendant, City of Dinuba."

"19. That in accordance with the stipulation filed herein by the Plaintiff, County of Tulare, and the said Defendant, City of Dinuba, the court finds that if computed on the basis set forth in finding No. 13 herein, the said sum of $15,074.34 deposited . . . as . . . due . . . up to and including the calendar year 1922, should be allocated as follows:

"The sum of $13,491.53 shall be paid to the County of Tulare, and the sum of $1,582.81 shall be paid to the City of Dinuba . . . "

The allocation was made, therefore, first, according to finding No. 13, and, second, according to the stipulation. The stipulation not being in the record, and the burden of showing error being upon appellant, we assume in favor of the judgment that it furnished all necessary facts and data to make the judgment legal and just, provided, of course, the principles and rules announced in the findings are just and equitable and in harmony with the decision upon the former appeal. As there said, the mileage rule of division is not exclusive. On page 681 the court in that case outlines the method by which a division of the toll payment should be divided among the counties and municipalities. It is there said: "Each municipal franchise will be entitled to its two per cent of whatever portion of such fund can be shown to arise wholly from the use of the easements under such franchise, and such portion of the remaining fund as the mileage of the given franchise easements bears to the entire mileage of the distributing system contributing to such gross earnings.

"We have adopted this appropriation, to the various rights of way, according to mileage, not necessarily as an exclusive method of distribution of the gross receipts, but as a practicable one where the contribution of the various franchise easements to the gross earnings cannot be otherwise determined. There may be portions of the distributing system where the entire transmission from the producing plant to the consumer is supplied through a given franchise, or is entirely supplied over private easements. Such earnings would inure to such specific franchises or easements. There may be instances where the extent or value of the distributing system over a given right of way may indicate its earning capacity; or where the service of lateral lines may be differentiated from that of main conduits in the value of their use of the easements. In such cases these conditions should be taken into account. But where, as will often happen, contribution to the earnings of the various rights of way is general and indistinguishable, we can see no reason why the proportionate mileage basis should not be used in apportioning the statutory percentage of gross receipts."

The foregoing is predicated upon the idea previously expressed in the opinion at page 677 in the following language: "But since the state is dealing, in this phase of the matter, with the distribution of a fund among its own political subdivisions, any plan may be adopted consistent with substantial justice."

The amount of franchise tolls awarded to the City of Dinuba apparently is not in excess of two per cent of the gross receipts arising from the use of the franchise lines within the boundaries of said city, and the method of determining the amount thereof is in harmony with the opinion in the appealed case.

The judgment is affirmed.

Sturtevant, J., and Nourse, J., concurred.