[Civ. No. 7745. First Appellate District, Division Two.—February 11, 1931.]

CITY OF MONROVIA (a Municipal Corporation), Respondent, v. SOUTHERN COUNTIES GAS COMPANY (a Corporation), Appellant.

LeRoy M. Edwards for Appellant.

Thomas J. Reynolds and L. T. Rice, *Amici Curiae* on Behalf of Appellant.

William Fleet Palmer for Respondent.

NOURSE, P. J.—Plaintiff sued for an accounting of the amount due from the defendant under its franchise to use the public streets of the plaintiff city for the distribution of gas. Plaintiff had judgment for $894.44, and the defendant appeals on typewritten transcripts.

Defendant is the successor in interest of a franchise granted in September, 1905, under the terms of the Broughton Act (Stats. 1905, p. 777). The franchise stipulated that the grantee should pay to the city annually "two (2%) per cent of the gross annual receipts . . . *arising* from the use, operation or possession of such franchise". For some years after the date of the franchise the grantee maintained and operated a gas manufacturing plant within the city limits of Monrovia where artificial gas was manufactured and distributed to consumers. ■ In 1920, upon the discovery of natural gas fields in the southern part of the state, the defendant abandoned its manufacturing plant in the City of Monrovia and since has supplied its consumers with natural gas from a widely scattered general system which reaches fifty-seven municipalities and five counties. In the operation of this business the company's transmission lines occupy public highways to and through the various counties and municipalities, but a considerable portion of its investment is located on private property and private rights of way. In order to determine the proper proportion of its gross proceeds which should be allocated to the various counties and municipalities served by it through this system the company followed the method laid down for that purpose by the Supreme Court in *County of Tulare* v. *City of Dinuba*, 188 Cal. 664 [206 Pac. 983, 984]. In accordance with this method the defendant paid to the various counties and municipalities within its system an amount estimated on the basis of the total mileage in each, eliminating that portion of its earnings attributable to the use of its properties located on private property. This allocation was accepted by all the counties and municipalities within the system except the City of Monrovia which asserted that it should be paid two per cent of the gross receipts from the sale of gas within its boundaries. The trial court adopted the city's theory and the correctness of its judgment as matter of law is the only question on this appeal.

The question is not one of first impression. The Supreme Court in *County of Tulare* v. *City of Dinuba, supra,* took great pains to outline and explain what it deemed to be the fair and equitable interpretation of the uncertain provisions of the Broughton Act—a statute which did not fully take into consideration the changing conditions under which it has been called to operate. The method of allocation of the percentages due the independent public agencies in a case of this kind was definitely determined and declared by the court in that decision as the fair and equitable interpretation of that act. The facts involved in the Tulare case were the same as those in the case at hand with the single exception that the City of Monrovia had granted a separate franchise before the consolidation of the public service company, whereas, in the Tulare case, the city of Dinuba was incorporated after the organization of the power company. This point we do not deem to be of any importance because the franchise was expressly made assignable, and no rights are here asserted by the appellant which could not have been, with equal force, asserted by its assignor.

In the Tulare case the Supreme Court pointed out that the percentages were to be based upon the gross receipts "arising from the use, operation or possession of the franchise", but said that these receipts *arise* not alone from the use of the streets for pipe-lines, "but likewise from the use, operation or possession of the power houses and private rights of way". But, said the court, "It will be noticed that the act in question makes no reference to compensation for the franchise over public highways from the revenues arising within the county by which the franchise was granted. If that had been the intention the very obvious way of expressing it would have been to say 'two *per centum* of the gross annual receipts within the county', instead of using the expression 'two *per centum* of the gross annual receipts' arising from 'the use, operation or possession' of the franchise. The reasonable construction of the language used is that each county or municipality is entitled to its percentage of the gross earnings arising from the use of its highway, in the proportion that the receipts arising from the use of such highways bear to the receipts attributable to all the rights of way of the entire system.

"We see no reason why this cannot be estimated on a mileage basis."

■ Respondent endeavors to draw a distinction between the Tulare case and this in that when the franchise was granted to appellant's predecessors it contemplated an entire plant to be located entirely within the city limits and that such was the situation for some years after the date of the franchise. But the record does not support respondent. The franchise contains nothing more than the usual grant to use the public streets for the purpose of laying gas-pipes. There is nothing in the franchise relating to the character of gas to be furnished or to the method or place of production. When the appellant changed from the artificial to natural gas, to the great benefit of the consumers, it, of course, became necessary to install transmission pipes to bring that gas to the city limits. These pipes necessarily passed through other cities and counties from which similar franchises were necessary. The receipts collected for the sale of gas within the City of Monrovia *arose* in part from appellant's franchise within the city and in part from its properties and rights of way outside the city.

This is a feature which the trial court did not take into consideration in its judgment. It is an essential part of the method of allocation approved by the Supreme Court in the Tulare case, hence further discussion is unnecessary.

The judgment is reversed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 13, 1931, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 6, 1931.