[L. A. No. 22570. In Bank. Jan. 22, 1954.]

COUNTY OF LOS ANGELES, Appellant, v. SOUTHERN COUNTIES GAS COMPANY OF CALIFORNIA (a Corporation), Respondent.

Harold W. Kennedy, County Counsel, A. Curtis Smith and Gerald G. Kelly, Assistant County Counsel, and John H. Larson, Deputy County Counsel, for Appellant.

LeRoy M. Edwards, Oscar C. Sattinger and Frank P. Doherty for Respondent.

Louis W. Myers and O'Melveny & Myers, as Amici Curiae on behalf of Respondent.

TRAYNOR, J.—This appeal involves the same basic problems as those presented in *City of San Diego* v. *Southern Calif. Tel. Corp., ante,* p. 110 [266 P.2d 14].

Defendant is a public utility engaged in purchasing and selling illuminating gas. It produces a small amount of the gas it sells. Its system is an integrated one and extends through six counties, including the County of Los Angeles. It holds franchises granted by these counties and many cities therein. By this action for declaratory relief and an accounting, plaintiff seeks a judgment establishing the basis on which

defendant must compute the amount due for four franchises granted it by plaintiff to lay its pipes in the public roads, streets, and highways in the county. Each franchise was granted by a separate ordinance pursuant to the Broughton Act. (Stats. 1905, p. 777, now Pub. Util. Code, §§ 6001-6071.) Section 3 of that act fixes the amount that must be paid for the franchises at "two per cent (2%) of the gross annual receipts of the person, partnership or corporation to whom the franchise is awarded, arising from its use, operation or possession." Each ordinance contains substantially the same provision.[1] Defendant filed statements and made payments for the years 1936-1939, which plaintiff claims were incorrect. Although this case is based on statements and figures for 1939, it will control all payments due from 1936 to the termination of each franchise. There is no dispute as to the figures in the accounting processes or what they represent and no dispute as to the end result for the other years once it is determined which of the accounting methods is correct. The trial court made findings and entered judgment sustaining defendant's computations and return of the amount due. Plaintiff appeals, contending that the judgment is not in accord with section 3 of the Broughton Act as construed by this court in County of *Tulare* v. *City of Dinuba* (1922), 188 Cal. 664 [206 P. 983].

Defendant made the following computation of the amount due plaintiff for 1939, the year selected by the parties for presenting the issues:

From its total capital, $31,216,087.13, defendant deducted its intangibles, $152,351.98, leaving $31,063,735.15 as its total investment in operative property, i. e., property used and useful in purchasing, producing, and distributing gas. It then segregated the amount invested in property not on rights of way, public or private, $9,955,707.06, and the amount invested in facilities on all rights of way, public and private, $21,108,028.09. Defendant then divided its total gross receipts, $9,620,838.45, by its total investment in operative property, $31,063,735.15, which gave $0.309713 of gross receipts per dollar invested. The amount invested in operative property on all rights of way, public and private, $21,108,-

---

[1] Ordinance 500 (New Series) is typical. It provides: ". . . the said grantee and his or its successors or assigns shall, during the life of said franchise, pay to the county of Los Angeles . . . two per cent (2%) of the gross annual receipts of such grantee, and his or its successors or assigns, arising from the use, operation or possession of said franchise."

028.09, was then multiplied by $0.309713, which gave a total of $6,537,430.70 as the gross receipts arising from the use of rights of way. Defendant then prorated this amount between public and private rights of way on a mileage basis. Defendant uses 3,249.225 miles of rights of way; 2,969.673 miles thereof, or 91.3963 per cent, are public rights of way. The amount of gross receipts attributable to all rights of way, $6,537,430.70, was then multiplied by 91.3963 per cent, the percentage of miles of right of way subject to franchises, which gave $5,974,969.77 as the amount of gross receipts attributable to such rights of way. Of the 2,969.673 miles of such rights of way, 456.829 miles or 15.3831 per cent are public rights of way in Los Angeles County. Multiplying $5,974,969.77 by 15.3831 per cent gave $919,135.57 as the gross receipts arising from the use of the franchises granted by plaintiff. Two per cent of that amount is $18,382.60, the charge for 1939 for the use of such franchises.

The foregoing computations were based on the following principles, which defendant maintains, and which we agree (see *City of San Diego* v. *Southern Cal. Tel. Corp.*, *ante*, p. 110 [266 P.2d 14]), are in accord with the principles enunciated or implicit in the opinion of this court in the Tulare case:

1. Defendant's gross receipts arise from all of its operative property, whether or not such property is located on rights of way, public or private, or on land owned or leased by it or on land owned by others.

2. Defendant's operative property consists of various kinds of real and personal property, including land leased or owned, compressor stations and equipment, meter stations and equipment, regulator stations and equipment, gas production equipment, pipe lines, valves, general office buildings, warehouses, transportation equipment, laboratory equipment, etc. Pipe lines and appurtenances on public and private rights of way are but a component part of defendant's over-all system.

3. Since the 2 per cent charge applies only to gross receipts arising from the use of the franchises, gross receipts arising from operative property other than franchises must be excluded from the base to which the 2 per cent charge applies.

4. As in rate making, there is a relationship between the value of the property and the amount it earns; the dollars invested in the property produce the dollars that form the gross receipts. Since every dollar invested in operative prop-

erty earns an equal part of the gross receipts, gross receipts are attributed to a particular item or class of operative property according to the dollars invested in it. Moreover, the factors in the proration must be measured in the same terms, and since the gross receipts are measured in dollars, the property giving rise to them must be measured in dollars. (*City of San Diego* v. *Southern Cal. Tel. Corp., ante,* p. 110 [266 P.2d 14].) Although this court's opinion in the Tulare case did not specify how the gross receipts were to be apportioned between the property on various rights of way and other property, the method here described is the only feasible method of making that apportionment and was used on the retrial of the Tulare case (87 Cal.App. 744, 745-746). It is fair, practical, readily understood, and easily verified.

█ 5. Gross receipts that arise from the use of the franchises are the gross receipts attributable to that part of the property using the public rights of way pursuant to the franchises.

█ 6. Gross receipts attributable to the various rights of way are apportioned between public and private rights of way according to mileage, "not necessarily as an exclusive method," but as a practicable one, as suggested in the Tulare case. (188 Cal. 664, 681.) Defendant could have made this apportionment according to the amounts invested in rights of way as in (4) above (*City of San Diego* v. *Southern Cal. Tel. Corp., ante,* pp. 110, 122, 125-126 [266 P.2d 14]), but plaintiff raises no question as to this method of apportioning gross receipts between rights of way and, in fact, adopts it in its own computations.

█ Plaintiff contends that in arriving at the base to which the 2 per cent charge applies, defendant and the trial court erred in deducting all gross receipts attributable to (1) its office and other general facilities; (2) the part of its distribution system on private property owned by consumers and not under lease by defendant; (3) the part of its distribution system on private property owned or leased by defendant. Since this contention would not permit the allocation of any of defendant's gross receipts to the foregoing classes of property, it necessarily involves a repudiation of the principle that defendant's gross receipts arise from all of its operative property and that gross receipts arising from all operative property other than franchises must be excluded from the base on which the 2 per cent charge is computed.

Plaintiff would justify this repudiation on the grounds that the Tulare case decided that the total gross receipts of a public utility can only be divided into two categories: (1) that which is credited to its distribution system and (2) that which is credited to its production system; that the gross receipts attributable to its distribution system constitutes the fund from which the 2 per cent charge shall be ascertained; that the only gross receipts of defendant from its operative property that can be attributed to its production system and therefore excluded from the fund from which the 2 per cent charge is ascertained is the $134,111.96 investment in facilities for manufacturing the small amount of gas it produces and does not buy from others; and that the only gross receipts of defendant attributable to its distribution system that are not subject to the 2 per cent charge are the gross receipts attributable to the use of private rights of way. In support of this contention, plaintiff cites the following language from the Tulare case:

"The gross receipts of this defendant accrue from two distinct agencies. One is the generating plants or powerhouses of the company, located in three separate counties; the other is the distributing system. . . . The first step in this accounting should be to determine as a question of fact what proportion of the total annual gross receipts of the public utility should be justly credited to its distribution system over various rights of way, as distinguished from its power plants or other producing agencies." (188 Cal. 673, 681.)

This language, however, must be read in the light of the conclusions this court had reached as a basis for the steps in the accounting. Among these conclusions were: "The corporation's gross receipts, to refer to the language of the Act *arise* from the 'use, operation or possession' not alone of these franchises over the streets and highways, but likewise from the use, operation, or possession of the powerhouses and private rights of way. The two last named are not subject to any franchise charges and the county or municipality is not entitled under the law to any part of the gross receipts attributable to these privately owned parts of the system." (188 Cal. 673-674.) It should be noted that the reason for the conclusion that the county or municipality was not entitled to any part of the gross receipts attributable to powerhouses and private rights of way, was that the company's gross receipts arise, not alone from the "use . . ."

of the franchise, but from the use of powerhouses and private rights of way, which are not subject to any franchise charges.

■ It is clear from the opinion in the Tulare case that the principle that this court there enunciated was that the county was not entitled to any part of the gross receipts from utility property not subject to franchise charges. The gross receipts attributable to generating plants, powerhouses, and private rights of way were excluded, not because the court regarded them as the only source of gross receipts other than the use of franchises, but because they were privately owned parts of the system not subject to any franchise charges. (See, also, *City of San Diego* v. *Southern Cal. Tel. Corp., ante*; *City of Monrovia* v. *Southern Counties Gas Co.*, 111 Cal.App. 659 [296 P. 117]; *Ocean Park Pier Amusement Corp.* v. *Santa Monica*, 40 Cal.App.2d 76 [104 P.2d 668, 879].) Since that reason applies with equal force to all operative property of the company not subject to any franchise charges, it cannot reasonably be implied that this court meant that only operative property of the kind mentioned contributes to gross receipts. That such an implication is absurd is apparent from the statement, "The absurdity of the position that any integral part of an electric distributing system like this is entitled to credit for the whole of the earnings from deliveries and sales in a given county or municipality when a large part of such service is over parts of the system not subject to such franchise permit may be shown by various illustrations." (188 Cal. 674.) ■ Operative property other than generating plants, powerhouses, and the distributing system consisting of poles and wires, are just as much an integral part of an electric or gas system as generating plants, powerhouses and private rights of way. Office buildings to house engineers and executive and administrative staff, warehouses, transportation equipment, communication equipment, meter devices, laboratory equipment and other facilities are all essential to an electric or gas company's operations and all contribute to its gross receipts. If it is absurd to say that any integral part of such a system is entitled to credit for the whole of its gross receipts, it is equally absurd to say that any number less than the whole is so entitled.

Plaintiff's contention is based on the erroneous conclusion that in the Tulare case this court regarded all property of a public utility other than generating plants and powerhouses as part of its distributing system. This court was there concerned, not with labels or a division of the

property into producing system and distributing system, but with property that was and property that was not subject to any franchise charge. The arbitrary classification of land, office buildings, warehouses, garages, construction equipment, automotive equipment, laboratory and other equipment as entirely part of the distribution system rather than as part of the production system or as part of both production and distribution systems or as "other [revenue] producing agencies" (188 Cal. 664, 681), would not only be unreasonable but pointless. ▉▉▉ Even if all of the property other than generating plants and powerhouses could reasonably be regarded as entirely part of the utility's distribution system, it would not follow that gross receipts attributable thereto should be included in the fund to which the 2 per cent charge applies. Thus, property in private rights of way is admittedly part of the distribution system. Yet this court in the Tulare case made it abundantly clear that gross receipts attributable to such property were not subject to the 2 per cent charge, since such property was "not subject to any franchise charges." For the same reason gross receipts from any other parts of the distribution system that are not subject to franchise charges are not subject to the 2 per cent charge.

Plaintiff does not quarrel with the capital investment method as such for allocating gross receipts to a particular item or class of operative property in it. In fact, it uses that method itself in its own apportionment between production and distribution. Plaintiff contends that although this method is "plausible" and "entirely correct," there is no occasion to use it as defendant uses it and that unless it is limited to the use plaintiff makes of it to apportion gross receipts between production and distribution, defendant will get a double deduction for the same purpose: (1) the deduction taken by the proration on a mileage basis for gross receipts attributable to private rights of way and (2) the deduction taken, before the proration on a mileage basis, for operative property not located on rights of way. This contention assumes the validity of the distinction, discussed at length above, that plaintiff would make between production and distribution and the conclusions it would draw therefrom, and is simply another way of asserting that only gross receipts attributable to generating plants and private rights of way can be excluded from the base to which the 2 per cent charge applies. There is no double deduction for the same purpose.

▮ Gross receipts attributable to private rights of way and gross receipts attributable to private property not located on rights of way are separately excluded from the base to which the 2 per cent charge applies, without duplication or overlapping, and for the same reason—they arise from property not subject to any franchise charges.

▮ Plaintiff would also justify its repudiation of the principle that defendant's gross receipts arise from all of its operative property and that gross receipts arising from all operative property other than franchises must be excluded from the base on which the 2 per cent charge is computed, on the following theory: The Broughton Act allows the utility to retain 98 per cent of its total gross receipts as the percentage applicable to its private property and requires it to pay to cities and counties 2 per cent of its gross receipts (less those attributable to private rights of way) for the use of public property; if it were allowed to take any more of its gross receipts as applicable to its private property, it would get a double deduction: (1) the amount so taken and (2) the 98 per cent it is allowed to retain. This theory ignores the limitation in the Broughton Act that the 2 per cent charge applies, not to defendant's total gross receipts, but only to its gross receipts "arising from the use" of the franchise. Thus, by its express terms the Broughton Act allows the utility to retain not only 98 per cent but 100 per cent of its gross receipts from its private property not subject to franchise charges, as well as 98 per cent of its gross receipts arising from the use of the franchises. It is not 2 per cent of its total gross receipts but only 2 per cent of its gross receipts "arising from the use" of the franchises that is exacted as a payment for the use of such franchises. The foregoing theory of plaintiff's is simply a slight modification, purportedly made in obedience to the Tulare case, of another contention. suggested by it that the Tulare case should be disregarded and that there should be only a proration of the entire gross receipts between rights of way on a mileage basis.[2] As we have pointed out at some length above, and

---

[2]In advancing this contention plaintiff makes the specious argument that gross receipts means all receipts without deduction and that there is no more justification for deducting a cent from gross receipts than there would be to deduct manufacturing costs from the retail price of gas appliances in computing a sales tax based on gross receipts. There is no deduction here of manufacturing costs, cost of gas, costs of operation or other costs. Gross receipts that are attributed to the use of franchises and to other operative property are still gross receipts. There

in *City of San Diego* v. *Southern Cal. Tel. Corp., ante,* pp. 110, 124 [266 P.2d 14], that is not what the statute provides. There is no more justification for prorating the total gross receipts between rights of way than there would be for attributing the total gross receipts to each franchise used and requiring the utility to pay 2 per cent of its total gross receipts to each of the numerous cities and counties granting the franchises.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent.

It appears to me that the gas company formula, accepted by the majority, attempts to deduct every possible dollar of invested capital from the distribution system before they compute the value of the distribution system attributable to either public or private ways. In this manner they seek to base the county's share on little more than *pipe in the ground.* This is a complete misconception of the Broughton Act and its interpretation by this court in the Dinuba case. (*County of Tulare* v. *City of Dinuba,* 188 Cal. 664 [206 P. 983].)

The Broughton Act provides that the utility "shall during the life of the franchise pay to the county or municipality two percent (2%) of the gross annual receipts of the grantee arising from the use, operation, or possession of the franchise." In giving an interpretation to the meaning of these words this court, in the Dinuba case, *supra,* stated (p. 673) that the corporation's gross receipts *"arise* from the 'use, operation or possession,' not alone of these franchises over the streets and highways, but likewise from the use, operation, or possession of the power-houses and private rights of way. The two last named are not subject to any franchise charges and the county or municipality is not entitled under the law to any part of the gross receipts attributable to these

---

is no deduction from gross receipts but a proration of gross receipts between property that is subject to franchise charges and property that is not, just as there is no deduction from gross receipts in plaintiff's proration of gross receipts between rights of way. Plaintiff's argument would necessarily lead to the conclusion that there can be no proration of gross receipts, even between rights of way, and that for every franchise granted by each county and city, defendant must pay 2 per cent of its total gross receipts.

privately owned parts of the system." This court then went on to say (p. 681) that "The first step in this accounting should be to determine as a question of fact what proportion of the total. amount of gross receipts of the public utility should be justly *accredited to its distributing system over various rights of way, as distinguished from its power plants or other producing agencies.*

"This *will establish the fund* from which the percentage of earnings 'arising from the use, operation or possession' of the various franchise easements shall be ascertained.

"The percentage of this fund to be apportioned to the respective public franchises will not include the proportion of such gross receipts of the distributing system as are attributable to the use of private rights of way occupied by the utility, as such part of the system is not subject to franchise charge." (Emphasis added.)

The clear import of this language is that we are *first* to deduct from gross revenue that amount attributable to the production system. This leaves us with the amount of gross revenue attributable to the *entire* distribution system. We then must determine what proportion of these earnings of the entire distribution system to attribute to the distribution system on public ways as contrasted to the distribution system located on private ways. Such was clearly this court's view in the Dinuba case when it said (p. 676): "The reasonable construction of the language used is that each county or municipality is entitled to its percentage of the gross earnings arising from the use of its highway, in the proportion that the receipts arising from the use of such highways bears to the receipts attributable to all the rights of way of the entire system." In determining what share of the distribution earnings to attribute to the public ways and what share to the private ways this court felt that the relative mileage of each was the most appropriate basis. This was illustrated by the following statement on page 681: "We have adopted this appropriation, to the various rights of way, according to mileage, not necessarily as an exclusive method of distribution of the gross receipts, but *as a practicable one where the contribution of the various franchise easements to the gross earnings cannot be otherwise determined.* . . . There may be instances where the extent or value of the distributing system over a given right of way may indicate its earning capacity; or where the service of lateral lines may be differentiated from that of main conduits in the value of their use

of the easements. In such cases these conditions should be taken into account. But where, as will often happen, contribution to the earnings of the various rights of way is general and indistinguishable, we can see no reason why the proportionate mileage basis should not be used in apportioning the statutory percentage of gross receipts.'' (Emphasis added.)

Thus we see that once we have determined what proportion of the gross receipts is attributable to the *entire* distribution system, we must find some method of determining what proportion is attributable to private ways and what portion is attributable to public ways. The most practical method of so doing is by use of the relative mileage basis. An example of its application was given by this court in the Dinuba case (p. 676) where it said: ''It may be assumed that the distributing system covers six hundred miles of easements. *The proportion of the gross receipts derived from and chargeable to the use of the distributing system should be credited to this entire mileage.* One-third of this mileage may extend over private rights of way which are not subject to any franchise liability. The remaining two-thirds of the mileage covered by county franchises is entitled to two-thirds of the two per cent of the gross amount, and each county is entitled to the percentage of this two-thirds in the proportion that the mileage of its franchises bears to the total mileage covered by all the franchises.'' (Emphasis added.)

By its language this court, in the Dinuba case, made it extremely clear that the 2 per cent was to be taken from that portion of the *gross receipts of the total distribution system* attributable to the distribution system on public ways; that the exact earnings of each mile in the system cannot always be accurately determined; that the value of each portion of the distribution system is not necessarily indicative of its earning capacity and therefore the best method of prorating the earnings of the entire distribution system between public and private ways is to use the mileage basis. All of this makes it apparent that this court established a rather simple formula whereby we first determine what portion of the total gross receipts is attributable to the distribution system, and then, as the best practical method of prorating these total distribution receipts between public and private ways, we use the relative mileage basis. From the gross receipts attributable to public ways the governmental bodies granting the

franchises are entitled to 2 per cent of their proportionate interest. What could be clearer?

As stated by the District Court of Appeal in its opinion in this case (see *County of Los Angeles* v. *Southern Counties Gas Co.*, (Cal.App.), 259 P.2d 665): "The Broughton Act recognized the justice of allowing a public utility a credit for its private property by exempting 98 per cent of the gross receipts from the franchise charge. The Dinuba case went a step further in allowing an apportionment of the 2 per cent toll so as to eliminate any charge for that proportion of the mileage over private rights of way. The gas company is not satisfied to accept the benefits granted by both the Broughton Act and the Dinuba decision, but in addition thereto it takes the additional deduction for the facilities located on private property by the utilization of the so-called 'capital investment method' of accounting."

The formula proposed by the county and accepted by the District Court of Appeal follows the pattern as established in the Dinuba case. The gas company, on the other hand, seeks to use a combination formula which includes some of the suggestions of the Dinuba case but which also includes several other calculations designed to reduce to a bare minimum the amount due the county. For a clearer understanding of the gas company's departure from the formula in the Dinuba case, it may be well at this time to compare the methods used by the county and by the gas company.

To begin with it should be noted that both the county and the gas company are in accord as to certain calculations even though they are made at different stages of the respective formulae. As a starting point both the county and gas company agree that in 1939 total invested capital equalled $31,216,081.13. From this both deduct intangibles, capital in general facilities and office and capital invested in production facilities. This leaves a total of $28,548,380.17 as that portion of the total capital which is invested in the distribution system. Once the *extent* of the distribution system, as contrasted to the producing system, has been ascertained, the next step should (under the Dinuba case) be to determine what proportion of the gross receipts can be attributed to the total distribution system. This is required under the Dinuba formula and is done by the county. Thus the county calculates that the amount of capital invested in distribution is 99.1306 per cent as contrasted to .8694 per cent invested in production facilities. Since 99.1306 per cent of the pro-

duction and distribution capital is invested in distribution facilities it follows that 99.1306 per cent of the gross receipts should be credited to the entire distribution system. This is the logical approach, this is the reasoning of the Dinuba case and this is the formula used by the county, but the gas company seeks still another deduction. Rather than determine the amount of capital invested in the entire distribution system they seek a figure which includes only the distribution capital invested in rights of way. To do this they deduct $7,556,603.15, which is the value of all distribution capital on consumer's property or on leased property. It is in this major respect that the gas company formula departs from the Dinuba case and differs from the county formula.

By so doing the gas company deducts over 25 per cent of the value of the entire distribution system before computing the gross receipts attributable to the distribution system. This leaves only the capital invested in rights of way and has the effect of basing the gross receipts attributable to the distribution system on little more than the value of the pipe in the ground. It is a departure from the strict mileage formula established by the decision in the Dinuba case.

The net result of the gas company formula is that it does not compute the gross receipts for the entire distribution system as required by the Dinuba case, but it tries to limit the fund to those receipts attributable only to rights of way. It attempts to exclude some of the distribution system which is located on private property in this preliminary calculation, when such exclusion should properly be made only on the mileage basis when the ratio of public to private system is determined.

As has already been pointed out in the Dinuba case the value of an isolated portion of the distributing system is not necessarily indicative of its earning capacity. Certain portions which are new may have a greater value but far less earning capacity than some of the older sections which have little book value but a great deal of earning power. The terminus of a gas conduit may be one of the most extensive parts of the line but that does not mean that the meters and terminal equipment account for most all the earnings and that the transporting conduit earns little or nothing. Thus we can see that while the amount of capital invested in an entire system may be some indication of its earnings, we cannot segregate isolated portions of a system and determine that its dollar value is a correct measurement of its earning

power. For this reason this court in the Dinuba case preferred to compute all the gross receipts attributable to the entire distribution system and then prorate them between the public and private ways on a mileage basis rather than deducting part of such system on a dollar value basis. This is necessary since as a practical matter the contributions of the various portions of the distribution system to the gross distribution receipts cannot otherwise be determined.

The majority fails to recognize the fact that some portions of the distribution system which are low in dollar value may have an earning power as great or greater than other portions which have a high book value. Based on this misconception it states that "As in rate making there is a relationship between the value of the property and the amount it earns; the dollars invested in the property produce the dollars that form the gross receipts. Since every dollar invested in operative property earns an equal part of the gross receipts, gross receipts are attributed to a particular item or class of operative property according to the dollars invested in it." Granted that there is a relationship between the value of a corporation's property and the amount it earns, we must recognize the limitations of such a broad generalization. Thus it might be said that there is a relationship between the value of the entire production system and the extent of its earning power; or it might be said that there is a relationship between the value of the entire distribution system and the amount it earns; but such a general relationship between the value of the property and the degree of earning power cannot be carried too far. For example, assume that every building on Block "A" has a direct conduit connection with the main gas line; that each conduit has a book value of $100; that one of the buildings serviced is a restaurant using gas ranges; that one of the buildings is a bakery using gas ovens; that two of the buildings are unoccupied; that one of the buildings is occupied by a frozen food locker; and that one of the buildings is occupied by a meat market. From this type of factual situation it can clearly be seen that the amount of gas consumed by the various customers serviced will vary to a considerable extent even though the value of the conduit into each building has the same $100 book value. Thus we see that the earning power of the various conduits will vary in spite of the fact that the same number of dollars is invested in each; and therefore the generalization that earnings have a relationship to dollars invested has its limitations.

Granting that there is a relationship between the dollars invested in an entire system and its earnings, there is not always an accurate relationship between the value of a particular portion of the system and its earnings. In view of this it is not correct to say (as the majority has) that "every dollar invested in operative property earns an equal part of the gross receipts," and that "gross receipts are attributed to a *particular item* or class of operative property according to the dollars invested in it." (Emphasis added.) By this reasoning the majority (following the theory advanced by the gas company) contends that the earning power of the public ways must be limited to the actual value of the investments in rights of ways after various other portions of the distribution system have been deducted. Thus they compute the dollars earned on a *particular portion* of the distribution system on a dollar investment basis even though such a method is only feasible when applied to an entire system as contrasted to an isolated part.

These limitations were recognized by this court in the Dinuba case when it stated (p. 682): "There may be instances where the extent or value of the distributing system over a given right of way may indicate its earning capacity; . . . But where, as will often happen, contribution to the earnings of the various rights of way is general and indistinguishable, we can see no reason why the proportionate mileage basis should not be used in apportioning the statutory percentage of gross receipts." Thus in order to compute the gross receipts arising from the use, operation or possession of the public franchise we must first determine the gross receipts of the entire distribution system and then on a mileage basis prorate these gross receipts between public and private ways.

By seeking to deduct the $7,556,603.15 as part of the distribution system on consumers' property or on leased property and later seeking to deduct 8.603 per cent of the mileage as being located on private ways the gas company is attempting a form of double deduction. The portion of the distribution system located at the *terminus* of each line is high in value ($7,556,603.15) but low in mileage so the gas company seeks to deduct this portion on a dollar basis. The other portions of the distribution system on private ways do not account for as much value (approximately $2,400,000) so the gas company is willing to compute these portions on a

mileage basis. Thus the gas company attempts to divide the distribution system on private ways into two parts. The one part having a high value ($7,556,603.15) they seek to deduct on a dollar basis. The other portions having a lower dollar value (approximately $2,400,000) but a higher mileage value they seek to deduct on a mileage basis. Actually the gas company is only entitled to one deduction from the receipts of the distribution system and that is a single deduction for the proportion of the distribution system on private ways. This should include that portion of the system running over private ways owned by the company, private ways leased by the company, private ways merely used by the company and all other forms of private ways including the conduits and equipment running to each consumer. Why should there be a distinction between private ways on consumers' property and other private ways? It is all part of the distribution system and the gas company will be credited with that portion of the distribution system on all private ways on a mileage basis.

By these calculations the gas company has reduced the total of distribution receipts to $6,537,430.70 rather than the total of $9,537,137.16 reached under the county formula. Since 91.3963 per cent of the distribution mileage is on public ways the gross receipts *fund* attributable to public ways, from which the 2 per cent is to be taken, should total $8,716,590.49 instead of $5,974,969.77 as computed by the company. The net result of the gas company's double deduction is that for 1939 the county of Los Angeles having 15.3831 per cent of the public ways would only be entitled to $18,382.60 rather than $26,817.63.

There can be no doubt that the Broughton Act as well as the Dinuba case intended the 2 per cent to be taken from the gross receipts attributable to the distribution system after the proportion attributable to private ways had been deducted. However, the manner of deducting or excluding such items must be consistent. It is not proper to exclude the part of the distribution system located on private property on a dollar invested basis and the balance on a mileage basis.

The term gross receipts was adequately defined by the District Court of Appeal (*County of Los Angeles* v. *Southern Counties Gas Co.,* (Cal.App.) 259 P.2d 665) when it said: "No authority has been found to define the term 'gross receipts' to mean anything other than the total without deduction; it means 'all receipts on business beginning and ending

within this state.' (*Pacific Gas & Elec. Co.* v. *Roberts,* 176 Cal. 183, 189 [167 P. 845].) The phrase is 'plain language which requires no interpretation . . . "perfectly plain, unequivocal language" . . . it must be taken in its plain sense without limitation or deduction save as expressly modified by the Legislature.' (*Bekins Van Lines, Inc.* v. *Johnson,* 21 Cal. 2d 135, 140 [130 P.2d 421].) Gross receipts mean all receipts arising from or growing out of the employment of the corporation's capital in its designated business. (*Robertson* v. *Johnson,* 55 Cal.App.2d 610 [131 P.2d 388].) Is there any doubt then that the Legislature intended for the utility to pay as a toll for the use of public highways on which to lay its pipes, tracks or cables, 2 per cent of its gross receipts?

"These conclusions are fortified by the doctrine of strict construction. The basic franchise ordinance (No. 1107, New Series, 1924) provides that 'the franchise is granted upon each and every condition contained herein, and in the ordinance granting the same and shall ever be strictly construed against the grantee.' When a franchise provides for the protection of the public interest, it is a fair assumption that the board of supervisors endeavored to perform its duty as trustee for the public and that the provisions were inserted for the purpose of securing for the public all substantial advantages. (38 Am.Jur. 214.) It is a general principle of construction that franchises granted by the state to private persons or corporations must be construed most strongly in favor of the public. If a doubt arises, nothing is to be taken by implication as against public rights. (*Clark* v. *City of Los Angeles,* 160 Cal. 30, 38 [116 P. 722]; *Sacramento* v. *Pacific Gas & Elec. Co.,* 173 Cal. 787, 791 [161 P. 978].)

"From all that is said above it is unavoidable that the franchise must be construed strictly in favor of the county and as so construed respondent should pay its full 2 per cent of its gross receipts each year of the life of its franchise with no deductions except those attributable to production capital and the proportion of the distribution system belonging to the utility."

It would also appear that the cases cited by the majority and the gas company were adequately distinguished by the District Court of Appeal (*County of Los Angeles* v. *Southern Counties Gas Co., supra,* (Cal.App.) 259 P.2d 665) in the following discussion: "*Ocean Park Pier Amusement Corp.* v. *City of Santa Monica,* 40 Cal.App.2d 76 [104 P.2d 668, 879],

cited by the gas company in support of its position, is readily distinguishable. In that case the city exacted the full statutory toll for the use of its own property and in addition sought to exact a charge for the use of the corporation's property. It was therefore properly held that no franchise payment need be made for the use of private property with respect to which no public property was contributed or used. In the case at bar, however, the gas company has consistently utilized public property in its operations and of course could not operate for an instant without public franchises, but the record discloses no attempt by appellant 'to include in the grant, land over which it had no proprietary interest,' as was true of the City of Santa Monica in the last cited authority, page 86.

"Respondent cites also *City of Monrovia* v. *Southern Counties Gas Co.*, 111 Cal.App. 659 [296 P. 117], as authority for its contention. The court said at page 660, 'In accordance with this method [from the Dinuba decision] the defendant . . . [eliminated] that portion of its earnings attributable to the use of its properties located on private property.' The context of the above sentence, a portion of which respondent quotes, makes it clear that the mileage allocation formula of the Dinuba decision, under no dispute in the instant case, is referred to. But in any event, the only issue involved in the Monrovia action was whether or not the city was entitled to 2 per cent of the gross receipts collected within the city, a point not at all involved in the instant controversy."

If we are to abide by the decision of the Dinuba case, if we are to insist on a fair and consistent formula without double deductions, and if we are to construe the franchise most strongly in favor of the public (as is required by law), then we must reverse the judgment rendered by the trial court.

For these reasons I would reverse the judgment.

Appellant's petition for a rehearing was denied February 17, 1954. Carter, J., was of the opinion that the petition should be granted.