[L. A. No. 23743.   In Bank.   Feb. 19, 1957.]

COUNTY OF SAN DIEGO, Appellant, v. SAN DIEGO GAS AND ELECTRIC COMPANY (a Corporation), Respondent.

James Don Keller, District Attorney, and Duane J. Carnes, Deputy District Attorney, for Appellant.

Luce, Forward, Kunzel & Scripps, Chickering & Gregory, Edgar A. Luce, Walter C. Fox, Jr., and James L. Focht, Jr., for Respondent.

TRAYNOR, J.—On November 28, 1952, the county of San Diego filed an action for declaratory relief and an accounting for monies claimed to be due for the years 1947 to 1951, inclusive, for franchises granted by the county to defendant under the Broughton Act (Pub. Util. Code, §§ 6001-6017). That act fixed the payments at ". . . two percent (2%) of the gross annual receipts of the grantee arising from the use, operation, or possession of the franchise."

Defendant serves all of San Diego County including several municipalities. It has two franchises from the county, one for electric lines and one for gas lines. It also holds franchises granted by the several municipalities.

Among the municipalities served by defendant are the

cities of San Diego, Coronado, and National City. These three cities are contiguous and for the purposes of this opinion are considered as one.

Defendant computed its payments to the county in the following manner: (1) it determined its gross receipts from the county alone, *excluding all receipts from city consumers*; (2) it apportioned *county* receipts between distribution property and all other operative property by means of an "investment factor," a percentage figure derived by dividing the value of investment in distribution property *in both the city and county* by the value of total investment in all operative property *in both the city and county*; (3) it apportioned the part of gross receipts thus attributed to distribution property between public and private rights of way according to the number of miles of each in the county.

The trial court found that the method used by defendant in its computation was correct, and therefore entered judgment for defendant. The county appeals.

The county contends that defendant's facilities are operated as a unit and that receipts of the entire system should therefore be included in the computation and apportioned among the various franchises by the method approved in prior decisions of this court. (*County of Tulare* v. *City of Dinuba,* 188 Cal. 664 [206 P. 983]; *City of San Diego* v. *Southern Calif. Tel. Corp.,* 42 Cal.2d 110 [266 P.2d 14]; *County of Los Angeles* v. *Southern Counties Gas Co.,* 42 Cal.2d 129 [266 P.2d 27]; see also *County of Tulare* v. *City of Dinuba,* 87 Cal.App. 744 [263 P. 249].) The county also urges that even if city receipts are to be segregated from defendant's total receipts, county receipts should likewise be so segregated, but that defendant does not consistently maintain such segregation, for it allocates part of the county receipts to the city by applying in its apportionment between distribution property and other operative property an "investment factor" that reflects the value of investment in plant in both the city and county.

The basic question presented is whether receipts from defendant's entire system should be included in the computation of payments due the county, or whether defendant can identify the gross receipts produced by its city property by treating its county and city operations as separate and distinct from each other and exclude that portion of its gross receipts from the computation of payments due the county.

■ The answer to this question is to be found in the rationale of system-wide computation and apportionment in the cases previously cited. This rationale is based on two premises. A utility's gross receipts are produced by all of its operative property. (*City of San Diego* v. *Southern Calif. Tel. Corp., supra,* 42 Cal.2d at 123-124; *County of Los Angeles* v. *Southern Counties Gas Co., supra,* 42 Cal.2d at 133, 136.) When operative properties are integrated and employed in a business as a unit and the production of receipts by one part of the property is dependent upon or contributes to the production of receipts by the other parts, the receipts produced by each part cannot be identified specifically and the total receipts must therefore be apportioned among the various properties according to the factors that produce them. (*County of Tulare* v. *City of Dinuba, supra,* 188 Cal. at 674, 678, 682; *City of San Diego* v. *Southern Calif. Tel. Corp., supra,* 42 Cal.2d at 124; *County of Los Angeles* v. *Southern Counties Gas Co., supra,* 42 Cal.2d at 133-136; see also *Underwood Typewriter Co.* v. *Chamberlain,* 254 U.S. 113, 121 [41 S.Ct. 45, 65 L.Ed. 165]; *State Railroad Tax Cases,* 92 U.S. 575, 608 [23 L.Ed. 663].)[1]

It is true that in the Dinuba case it was recognized that apportionment by formula might not be necessary in every situation. It was said: "We have adopted this appropriation, to the various rights of way, according to mileage, not necessarily as an exclusive method of distribution of the gross receipts, but as a practicable one where the contribution of the various franchise easements to the gross earnings cannot be otherwise determined. There may be portions of the distributing system where the entire transmission from the producing plant to the consumer is supplied through a given franchise, or is entirely supplied over private easements. Such earnings would inure to such specific franchises or easements. . . . But where, as will often happen, contribution to the earnings of the various rights of way is general and indistinguishable, we can see no reason why the proportionate mileage basis should not be used in apportioning the statutory percentage of gross receipts." (188 Cal. at 681-682.)

[1]Similar principles are applied in the cases arising under the California Bank and Corporation Franchise Tax Act now found in part 11 (§§ 23001 et seq.) of the Revenue and Taxation Code. (See *Butler Brothers* v. *McColgan,* 17 Cal.2d 664 [111 P.2d 334]; *Edison Calif. Stores* v. *McColgan,* 30 Cal.2d 472 [183 P.2d 16]; *John Deere Plow Co.* v. *Franchise Tax Board,* 38 Cal.2d 214 [238 P.2d 569].)

The exceptional situation contemplated by that statement, however, is more fully explained by another statement in the opinion: "If the electric plant is all within the borders of a single municipality and entirely distributed from transmission lines covered by the franchise no complications can arise. The entire proportion of the earnings attributable to the transmission and delivery of electricity belongs to the gross receipts from which the two per cent shall be paid. Immediately the operation of the business passes such limitation the complications begin, if we treat the separate franchises as controlling the income from all electricity passing through the part of the system covered by such franchise. . . ." (188 Cal. at 675.) ▮ In other words, the exceptional situation in which apportionment by formula is not necessary is one in which one franchise is used solely and exclusively in serving the community that granted the franchise and no other. The Dinuba case expressly recognized "[t]he absurdity of the position that any integral part of an electric distributing system . . . is entitled to credit for the whole of the earnings from deliveries and sales in a given county or municipality when a large part of such service is over parts of the system not subject to such franchise or permit. . . ." (188 Cal. at 674.)

We are thus brought to the question whether defendant operates its property on a system-wide basis or whether its city and county operations are so separate and distinct that the receipts of one are not dependent upon or contributed to by the other.

During the years in question[2] defendant operated what is described as a radial system. The bulk of its administrative facilities and most of its production plant were within the city. Its distribution lines originated in the city and extended outward into the county. All of the gas and electricity used in the city were produced and distributed therein. Many county consumers were also served by the lines originating in the city with gas and electricity produced in the city.

---

[2]On November 1, 1949, the company started importing gas over county rights of way for use in the city. After the commencement of this action the company made supplemental payments to the county for use of the gas franchise for the last two months of 1949 and for the years 1950 and 1951, basing those payments on a computation that includes receipts from its entire system. The dispute as to the gas franchise is therefore limited to the payments for 1947, 1948, and the first ten months of 1949.

■ The conclusion is inescapable that defendant's operative property, including its franchises, is integrated and operated as an interdependent whole. Defendant itself has recognized the unitary nature of its business, for in apportioning county receipts between distribution property and other operative property it has used an "investment factor" reflecting the value of investment in the entire system. Moreover, the production of receipts in the county is completely dependent upon the use of city facilities. The same lines that carry gas and electricity to city consumers are extended into the county to supply consumers there. General plant and office facilities in the city contribute to an indeterminate extent to the production of county receipts (*City of San Diego* v. *Southern Calif. Tel. Corp., supra*, 42 Cal.2d at 122), and such receipts in turn contribute to the maintenance of such plant and facilities. Thus there can be no doubt that defendant's business must be regarded as unitary to determine what part of its total receipts, including county receipts, are attributable to its operative property in the city.

■ Since it is unquestionably unitary for that purpose, it does not lose its unitary character when it is necessary to determine what part of its total receipts are attributable to operative property in the county, for its business cannot be, for purposes of the Broughton Act, both unitary and nonunitary at the same time. As was said in *County of Tulare* v. *City of Dinuba, supra,* ". . . the purpose of the act was to impose only a two per cent charge upon the gross receipts arising from the entire franchise rights enjoyed in all the highways covered by the system, whether in one or several counties or municipalities. When the company or corporation has paid two per cent of all its earnings properly attributable to all its franchises whether covering one or more counties, it has fulfilled its obligation. It, of course, cannot concern such corporation how this amount is distributed to the various municipalities, so long as it is released from further liability. . . ." (188 Cal. at 675.)

■ We conclude therefore that since defendant's business is a unitary one and its county and city operations are integrated rather than separate and distinct from each other, defendant must compute its payments to the county on a system-wide basis in accord with established principles governing such computation. (*County of Los Angeles* v. *Southern Counties Gas Co., supra,* and cases cited.)

The judgment is reversed for a recomputation of the dis-

puted payments in conformity with the views expressed in this opinion.

Gibson, C. J., Shenk, J., Carter J., and Spence, J., concurred.

McCOMB, J.—I dissent. I agree with the reasoning in the opinion prepared by Mr. Presiding Justice Barnard for the District Court of Appeal in *County of San Diego* v. *San Diego Gas & Electric Co.* (Cal.App), 299 P.2d 664.

Schauer, J., concurred.

Respondent's petition for a rehearing was denied March 20, 1957. Schauer, J., and McComb, J., were of the opinion that the petition should be granted.